## LYNCH, COLLECTOR OF INTERNAL REVENUE FOR THE DISTRICT OF MINNESOTA, *v.* HORNBY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 422.   Argued March 4, 5, 6, 1918.—Decided June 3, 1918.

The Income Tax Act of October 3, 1913, c. 16, 38 Stat. 166, drew a distinction between a shareholder's undivided interest in the gains and profits of a corporation prior to declaration of a dividend, and his participation in the dividends declared and paid; treating the latter, in ordinary circumstances, as part of his income for the purpose of the "surtax," and not regarding the former as taxable to him unless fraudulently accumulated to evade the tax.

Under the Sixteenth Amendment, Congress may tax without apportionment dividends received in the ordinary course by a shareholder from a corporation, even though extraordinary in amount and derived from a surplus of corporate assets existing before the Amendment.

Under the Income Tax Act of 1913, dividends declared and paid in the ordinary course by a corporation to its shareholders after March 1, 1913, whether from current earnings or from a surplus accumulated before that date, were taxable to the individual shareholders as income, under the "surtax" provision. *Lynch* v. *Turrish, ante,* 221, and *Southern Pacific Co.* v. *Lowe, ante,* 330, distinguished.

236 Fed. Rep. 661, reversed.

THE case is stated in the opinion.

*The Solicitor General,* with whom *Mr. Wm. C. Herron* was on the brief, for petitioner.

*Mr. A. W. Clapp,* with whom *Mr. N. H. Clapp, Mr. H. Oldenburg* and *Mr. H. J. Richardson* were on the brief, for respondent.

*Mr. Robert R. Reed,* by leave of court, filed a brief on behalf of the Investment Bankers' Association of America, as *amicus curiæ.*

MR. JUSTICE PITNEY delivered the opinion of the court.

Hornby, the respondent, recovered a judgment in the United States District Court against Lynch, as Collector of Internal Revenue, for the return of $171, assessed as an additional income tax under the Act of October 3, 1913, c. 16, 38 Stat. 114, 166, and paid under protest. The Circuit Court of Appeals affirmed the judgment, 236 Fed. Rep. 661, and the case comes here on certiorari. It was submitted at the same time with *Lynch* v. *Turrish, ante,* 221; *Southern Pacific Co.* v. *Lowe, ante,* 330; and *Peabody* v. *Eisner, post,* 347, arising under the same act, and this day decided.

The facts, in brief, are as follows: Hornby, from 1906 to 1915, was the owner of 434 (out of 10,000) shares of the capital stock of the Cloquet Lumber Company, an Iowa corporation, which for more than a quarter of a century had been engaged in purchasing timber lands, manufacturing the timber into lumber and selling it. Its shares had a par value of $100 each, making the entire capital stock $1,000,000. On and prior to March 1, 1913, by the increase of the value of its timber lands and through its business operations, the total property of the company had come to be worth $4,000,000, and Hornby's stock, the par value of which was $43,400, had become

worth at least $150,000. In the year 1914 the company was engaged in cutting its standing timber, manufacturing it into lumber, selling the lumber, and distributing the proceeds among its stockholders. In that year it thus distributed dividends aggregating $650,000, of which $240,000, or 24 per cent. of the par value of the capital stock, was derived from current earnings, and $410,000 from conversion into money of property that it owned or in which it had an interest on March 1, 1913. Hornby's share of the latter amount was $17,794, and this not having been included in his income tax return, the Commissioner of Internal Revenue levied an additional tax of $171 on account of it, and this forms the subject of the present suit.

The case was tried in the District Court and argued in the Circuit Court of Appeals together with *Lynch v. Turrish,* (236 Fed. Rep. 653), and was treated as presenting substantially the same question upon the merits. In our opinion it is distinguishable from the *Turrish Case,* where the distribution in question was a single and final dividend received by Turrish from the Payette Company in liquidation of the entire assets and business of the company and a return to him of the value of his stock upon the surrender of his entire interest in the company, at a price that represented its intrinsic value at and before March 1, 1913, when the Income Tax Act took effect.

In the present case there was no winding up or liquidation of the Cloquet Lumber Company, nor any surrender of Hornby's stock. He was but one of many stockholders, and had but the ordinary stockholder's interest in the capital and surplus of the company, that is, a right to have them devoted to the proper business of the corporation and to receive from the current earnings or accumulated surplus such dividends as the directors in their discretion might declare. *Gibbons v. Mahon,* 136 U. S. 549, 557. The operations of this company in the year 1914

were, according to the facts pleaded, of a nature essen-
tially like those in which it had been engaged for more
than a quarter of a century. The fact that they resulted
in converting into money, and thus setting free for dis-
tribution as dividends a part of its surplus assets accumu-
lated prior to March 1, 1913, does not render Hornby's
share of those dividends any the less a part of his income
within the true intent and meaning of the act, the per-
tinent language of which is as follows (38 Stat. 166, 167):

"A. Subdivision 1. That there shall be levied,
assessed, collected and paid annually upon the entire
net income arising or accruing from all sources in the
preceding calendar year to every citizen of the United
States, . . . and to every person residing in the
United States, . . . a tax of 1 per centum per annum
upon such income, except as hereinafter provided; . . .

"B. That, subject only to such exemptions and
deductions as are hereinafter allowed, the net income of a
taxable person shall include gains, profits, and income
derived from salaries, wages, or compensation for personal
service . . . , also from interest, rent, dividends,
securities, or the transaction of any lawful business
carried on for gain or profit, or gains or profits and income
derived from any source whatever."

Among the deductions allowed for the purpose of the
normal tax is "seventh, the amount received as dividends
upon the stock or from the net earnings of any corpora-
tion, . . . which is taxable upon its net income as
hereinafter provided." There is a graduated additional
tax, commonly known as a "surtax," upon net income
in excess of $20,000, including income from dividends,
and for the purpose of this additional tax "the taxable
income of any individual shall embrace the share to
which he would be entitled of the gains and profits, if
divided or distributed, whether divided or distributed or
not, of all corporations . . . formed or fraudulently

availed of for the purpose of preventing the imposition of such tax through the medium of permitting such gains and profits to áccumulate instead of being divided or distributed."

It is evident that Congress intended to draw and did draw a distinction between a stockholder's undivided share or interest in the gains and profits of a corporation, prior to the declaration of a dividend, and his participation in the dividends declared and paid; treating the latter, in ordinary circumstances, as a part of his income for the purposes of the surtax, and not regarding the former as taxable income unless fraudulently accumulated for the purpose of evading the tax.

This treatment of undivided profits applies only to profits permitted to accumulate after the taking effect of the act, since only with respect to these is a fraudulent purpose of evading the tax predicable. Corporate profits that accumulated before the act took effect stand on a different footing. As to these, however, just as we deem the legislative intent manifest to tax the stockholder with respect to such accumulations only if and when, and to the extent that, his interest in them comes to fruition as income, that is, in dividends declared, so we can perceive no constitutional obstacle that stands in the way of carrying out this intent when dividends are declared out of a preexisting surplus. The act took effect on March 1, 1913, a few days after the requisite number of States had given approval to the Sixteenth Amendment, under which for the first time Congress was empowered to tax income from property without apportioning the tax among the States according to population. *Southern Pacific Co.* v. *Lowe, supra.* That the retroactivity of the act from the date of its passage (October 3, 1913) to a date not prior to the adoption of the Amendment was permissible is settled by *Brushaber* v. *Union Pacific R. R. Co.*, 240 U. S. 1, 20. And we deem it equally clear that Con-

gress was at liberty under the Amendment to tax as income, without apportionment, everything that became income, in the ordinary sense of the word, after the adoption of the Amendment, including dividends received in the ordinary course by a stockholder from a corporation, even though they were extraordinary in amount and might appear upon analysis to be a mere realization in possession of an inchoate and contingent interest that the stockholder had in a surplus of corporate assets previously existing. Dividends are the appropriate fruit of stock ownership, are commonly reckoned as income, and are expended as such by the stockholder without regard to whether they are declared from the most recent earnings, or from a surplus accumulated from the earnings of the past, or are based upon the increased value of the property of the corporation. The stockholder is, in the ordinary case, a different entity from the corporation, and Congress was at liberty to treat the dividends as coming to him *ab extra,* and as constituting a part of his income when they came to hand.

Hence we construe the provision of the act that "the net income of a taxable person shall include gains, profits, and income derived from . . . interest, rent, dividends, . . . or gains or profits and income derived from any source whatever" as including (for the purposes of the additional tax) all dividends declared and paid in the ordinary course of business by a corporation to its stockholders after the taking effect of the act (March 1, 1913), whether from current earnings, or from the accumulated surplus made up of past earnings or increase in value of corporate assets, notwithstanding it accrued to the corporation in whole or in part prior to March 1, 1913. In short, the word "dividends" was employed in the act as descriptive of one kind of gain to the individual stockholder; dividends being treated as the tangible and recurrent returns upon his stock, analogous to the in-

terest and rent received upon other forms of invested capital.

In the more recent Income Tax Acts, provisions have been inserted for the purpose of excluding from the effect of the tax any dividends declared out of earnings or profits that accrued prior to March 1, 1913. This originated with the Act of September 8, 1916, and has been continued in the Act of October 3, 1917.[1] We are referred to the legislative history of the Act of 1916, which it is contended indicates that the new definition of the term "dividends" was intended to be declaratory of the mean-

---

[1] In Act of September 8, 1916, c. 463, 39 Stat. 756, 757, which took the place of the Act of 1913, the substance of what we have quoted from paragraph B of the 1913 Act was embodied in § 2 (a), but with this proviso: "*Provided,* That the term 'dividends' as used in this title shall be held to mean any distribution made or ordered to be made by a corporation . . . *out of its earnings or profits accrued since March first, nineteen hundred and thirteen,* and payable to its shareholders, whether in cash or in stock of the corporation," etc. And by the Act of October 3, 1917, c. 63, 40 Stat. 300, 329, 337–8, § 2 (a) of the 1916 Act was amended by being repeated without the proviso (p. 329), while the proviso was inserted as a new section—31 (a)—and to it was added a subsection, (b), as follows:

"(b) Any distribution made to the shareholders or members of a corporation . . . in the year nineteen hundred and seventeen, or subsequent tax years, shall be deemed to have been made from the most recently accumulated undivided profits or surplus, and shall constitute a part of the annual income of the distributee for the year in which received; and shall be taxed to the distributee at the rates prescribed by law for the years in which such profits or surplus were accumulated by the corporation, . . . but *nothing herein shall be construed as taxing any earnings or profits accrued prior to March first, nineteen hundred and thirteen,* but such earnings or profits may be distributed in stock dividends or otherwise, exempt from the tax, after the distribution of earnings and profits accrued since March first, nineteen hundred and thirteen, has been made. This subdivision shall not apply to any distribution made prior to August sixth, nineteen hundred and seventeen, out of earnings or profits accrued prior to March first, nineteen hundred and thirteen."

ing of the term as used in the 1913 Act. We cannot accept this suggestion, deeming it more reasonable to regard the change as a concession to the equity of stockholders granted in the 1916 Act, in view of constitutional questions that had been raised in this case, in the companion case of *Lynch* v. *Turrish*, and perhaps in other cases. These two cases were commenced in October, 1915; and decisions adverse to the tax were rendered in the District Court in January, 1916, and in the Circuit Court of Appeals September 4, 1916.

We repeat that under the 1913 Act dividends declared and paid in the ordinary course by a corporation to its stockholders after March 1, 1913, whether from current earnings or from a surplus accumulated prior to that date, were taxable as income to the stockholder.

We do not overlook the fact that every dividend distribution diminishes by just so much the assets of the corporation, and in a theoretical sense reduces the intrinsic value of the stock. But, at the same time, it demonstrates the capacity of the corporation to pay dividends, holds out a promise of further dividends in the future, and quite probably increases the market value of the shares. In our opinion, Congress laid hold of dividends paid in the ordinary course as *de facto* income of the stockholder, without regard to the ultimate effect upon the corporation resulting from their payment.

Of course we are dealing here with the ordinary stockholder receiving dividends declared in the ordinary way of business. *Lynch* v. *Turrish* and *Southern Pacific Co.* v. *Lowe*, rest upon their special facts and are plainly distinguishable.

It results from what we have said that it was erroneous to award a return of the tax collected from the respondent, and that the judgment should be

*Reversed, and the cause remanded to the District Court for further proceedings in conformity with this opinion.*