Appeal of JAMES DOBSON.                    Docket No. 863.

> Distributions made in 1917 by a corporation in liquidation are within the provisions of section 31 (b) of the Revenue Act of 1916 (added by section 1211 of the Revenue Act of 1917), and to the extent that they are paid out of profits accumulated after March 1, 1913, are taxable as dividends. Where all profits were so distributed in 1917, any further distribution in 1918 must have been out of capital and is not taxable under section 201 (c) of the Revenue Act of 1918.
>
> Taxpayer bought stock at par, and later, when the corporation went into receivership, offered it for sale at auction but bought it in himself at $4 per share. *Held*, that the sale was nugatory and did not establish a loss.

Submitted January 28, 1925; decided April 29, 1925.

*William Clark Mason, Esq.*, and *Henry Gross, Esq.*, for the taxpayer.

*John D. Foley, Esq.*, for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal involves two points upon which issue is joined, one involving the proper treatment of distributions made in 1917 and 1918 by a corporation in liquidation, and the other involving a deduction claimed in 1920 for loss of value of stock held by the taxpayer. From the pleadings and stipulations made orally by counsel at the hearing, the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer was the owner of 1,657 shares of the common stock of Harrison Brothers & Co., Inc., of the par value of $100

each, acquired by him prior to March 1, 1913, at an average cost of $98.1016 per share. They were worth $98.1016 per share on March 1, 1913. In 1916 the corporation decided to sell its assets, and in 1917 resolved to liquidate. Between March 1, 1913, and liquidation, it had accumulated earnings constituting a surplus of $101.95 per share. In the liquidation the taxpayer received distributions amounting to $170 per share in 1917 and $15 per share in 1918. It does not appear whether or not this completed the liquidation. In his 1917 income-tax return the taxpayer reported $101.95 per share as dividends and paid a tax accordingly. He treated $68.05 per share as a partial recovery of his capital investment. In preparing his 1918 return he treated the $15 per share received as a further partial recovery of his capital, leaving a balance unrecovered of $15.0516 per share. In auditing the 1918 return the Commissioner treated the $15 per share or $24,855, received in 1918, as taxable income. He determined a deficiency, placed in issue by this appeal, of $41,318.15.

2. After March 1, 1913, the taxpayer purchased 1,452 shares of East Coast Fisheries Co. and East Coast Fisheries Products Co. stock for $145,200. In 1920 these corporations became insolvent and went into the hands of a receiver. The taxpayer, in an effort to ascertain his loss, caused the shares to be advertised for sale at auction by recognized public auctioneers. They were advertised for sale, but at the sale no bids were made by anybody else, and the taxpayer's brokers bought the stock in at $4 per share, in their own names, but as his agents and for his account, and promptly re-transferred them to him. Later, on reorganization of the corporations by a stockholders' committee, he exchanged his stock for stock in a new corporation called the Deep Seas Fisheries Co., giving twenty shares of old stock for one share of new. The new corporation has never paid dividends but is still in business, and its stock has a book value of $6 per share. In his 1920 return the taxpayer claimed a deduction of the difference between $100 and $4 per share on this stock. This deduction was disallowed by the Commissioner who, on account of such disallowance, together with the item mentioned in paragraph 3, below, determined a deficiency of $51,041.73, brought in question by this appeal.

3. The taxpayer received certain dividends in 1919. They were treated as 1920 income by an examining revenue agent, who, through a mathematical error, increased their amount by $34,080.67. The Commissioner restored the correct amount of the dividends to 1919 income, but through oversight left the erroneous excess of $34,080.67 in 1920 income, and this, combined with the item mentioned in paragraph 2, above, resulted in the determination of deficiency therein mentioned. The Commissioner concedes error in having added this item of $34,080.67 to 1920 income.

### DECISION.

The deficiency determined by the Commissioner for 1918 is disallowed. The deficiency determined by the Commissioner for 1920 should be recomputed in accordance with the following opinion. Final determination will be settled on ten days' notice in accordance with Rule 50.

IVINS: This appeal involves three adjustments made by the Commissioner in auditing the taxpayer's income-tax returns, two of which are in issue. The Commissioner concedes error as to the third, it being due to a mistake in computation.

1. The first point in controversy is the proper treatment of $24,855 received by the taxpayer in 1918 as a stockholder of Harrison Brothers & Co., Inc., then in liquidation. He originally paid $98.1016 per share for his stock. Between March 1, 1913, and the liquidation, the corporation accumulated earnings constituting a surplus of $101.95 per share. The liquidation began in 1917, during which year the taxpayer received in distributions $170 per share. In 1918 he received a further sum of $15 per share. He reported $101.95 per share as dividend income for 1917, and paid a tax accordingly.

The taxpayer's theory is that, under section 31(b) of the Revenue Act of 1916 (added by section 1211 of the Revenue Act of 1917), the moneys received by him in 1917 constituted a distribution of profits to the extent of $101.95 per share, and a return of capital to the extent of $68.05 per share; and that the distribution of $15 per share in 1918 constituted a further partial return of capital—not to be included in income.

The Commissioner contends that the provisions of section 31(b) of the Revenue Act of 1916 have no application to payments made in final liquidation, but only to dividends paid by a corporation continuing in business, that distributions in liquidation should be treated as constituting payment in exchange for stock, as provided in section 201(c) of the Revenue Act of 1918, and that the taxpayer, having recovered the full cost of his shares, and more, in 1917, should have his 1918 receipts treated as taxable profit.

The history of the provisions of the various Revenue Acts with respect to dividends and corporate distributions is of assistance to us in considering this issue. The Revenue Act of 1913, section B, defined net income as including "dividends," but it contained no definition of dividends and made no provision with respect to the assets out of which distributions by corporations should be deemed to have been made.

Considerable doubt arose as to the taxability of distributions of surplus accumulated prior to the adoption of the Sixteenth Amendment, both when made as ordinary dividends and when made as part of a general liquidation. The United States District Court, in January, 1916, and the Circuit Court of Appeals for the Eighth Circuit, on September 4, 1916, decided that such distributions, whether as ordinary dividends or in liquidation, were not taxable to the recipient stockholders. *Lynch* v. *Hornby*, 236 Fed. 661; *Lynch* v. *Turrish*, 236 Fed. 653. Before these cases reached the Supreme Court, the Revenue Acts of 1916 and 1917 had been passed and definitions of "dividends" were included in them. The Supreme Court, in *Lynch* v. *Hornby*, 247 U. S. 339, expressed the view that the new provisions were not intended to be declaratory of the intent of the 1913 Act, but rather constituted a concession to the equity of stockholders.

Section 2 (a) of the 1916 Act defined net income as including dividends, but contained this proviso:

*Provided,* That the term "dividends" as used in this title shall be held to mean any distribution made or ordered to be made by a corporation, joint-

stock company, association, or insurance company, out of its earnings or profits accrued since March first, nineteen hundred and thirteen, and payable to its shareholders, whether in cash or in stock of the corporation, joint-stock company, association, or insurance company, which stock dividend shall be considered income, to the amount of its cash value.

In the Revenue Act of 1917, section 2 (a) of the 1916 Act was amended by being repeated without the proviso, while the proviso was inserted as a new section 31 (a), and to it was added a new subsection, (b), as follows:

(b) Any distribution made to the shareholders or members of a corporation, joint-stock company, or association, or insurance company, in the year nineteen hundred and seventeen, or subsequent tax years, shall be deemed to have been made from the most recently accumulated undivided profits or surplus, and shall constitute a part of the annual income of the distributee for the year in which received, and shall be taxed to the distributee at the rates prescribed by law for the years in which such profits or surplus were accumulated by the corporation, joint-stock company, association, or insurance company, but nothing herein shall be construed as taxing any earnings or profits accrued prior to March first, nineteen hundred and thirteen, but such earnings or profits may be distributed in stock dividends or otherwise, exempt from the tax, after the distribution of earnings and profits accrued since March first, nineteen hundred and thirteen, has been made. This subdivision shall not apply to any distribution made prior to August sixth, nineteen hundred and seventeen, out of earnings or profits accrued prior to March first, nineteen hundred and thirteen.

Subsequently, the Supreme Court, on June 3, 1918, affirmed *Lynch* v. *Turrish*, 247 U. S. 221, and reversed *Lynch* v. *Hornby*, 247 U. S. 339. Then, in the Revenue Act of 1918, approved February 24, 1919, Congress dropped those provisions of section 31 (b), *supra*, which taxed dividends at the rates in effect for the years in which the distributed profits had been earned, and added the provision of section 201 (c), as follows:

(c) A dividend paid in stock of the corporation shall be considered income to the amount of the earnings or profits distributed. Amounts distributed in the liquidation of a corporation shall be treated as payments in exchange for stock or shares, and any gain or profit realized thereby shall be taxed to the distributee as other gains or profits.

In the circumstances, it would seem that Congress, when it passed the Acts of 1916 and 1917, intended to treat ordinary dividends and distributions in liquidation alike, as they had been treated by the District Court and the Circuit Court of Appeals, but in the 1918 Act decided to make a distinction between them as the Supreme Court had done in interpreting the 1913 Act. This being the case, we can hardly regard the provisions of section 201 (c) of the Act of 1918 as declaratory of the intent of the 1917 Act.

The 1917 Act, treating ordinary dividends and distributions in liquidation alike, provided that " *any distribution* * * * shall be deemed to have been made from the most recently accumulated undivided profits or surplus." And in " any distribution " must be included distributions made in liquidation as well as those made in ordinary course of business. The term *distribution*, in its commonly accepted meaning, certainly includes payments made to stockholders in liquidating a corporation. The Supreme Court so used it in its opinion in *Lynch* v. *Turrish*, *supra*.

So, when Harrison Brothers & Co., Inc., commenced dissolution in 1917 and paid the taxpayer $170 on account of each share he held, that payment constituted a distribution under the 1917 Act, and

was deemed made out of the most recently accumulated profits, as far as they would go. The accumulated profits amounted to $101.95 per share, and to that extent the taxpayer received a distribution taxable under section 31(b). He also received $68.05 per share of the capital of the corporation, representing a nontaxable return of capital, and had, unliquidated, a balance of $30.0516 per share of the cost to him of the stock.

Had no distribution been made until 1918 all his receipts would have come within the provisions of section 201(c) of the 1918 Act. But the provisions of the 1918 Act, in no way retrospective beyond January 1, 1918, could not change the nature of his 1917 receipts, controlled by the 1917 Act. And by January 1, 1918, he no longer had an interest in any profits or surplus of the corporation—he had nothing left but an interest in undistributed capital, offsetting an unrealized balance of cost to him of $30.0516 per share. The realization of $15 per share on account of it in 1918 was obviously not a profit.

The Commissioner's contention upon this first point must be rejected, and the deficiency determined for 1918 disapproved.

2. The taxpayer was the owner of 1,452 shares of East Coast Fisheries stock which had cost him par after March 1, 1913. In 1920 the corporations became insolvent and a receiver was appointed for them. The taxpayer, appreciating that his stock had declined in value so as to be almost, if not quite, worthless, decided to take his loss in 1920 and get the benefit of a deduction in his 1920 tax return. But he was badly advised as to how to go about it, and, instead of making a bona fide sale and charging off the difference between cost and sale price as a loss, he had it advertised for sale by auctioneers and then had his brokers bid it in for him at $4 a share. This transaction, of course, did not constitute a sale, for it was admitted that the brokers bid in the stock as the agents of the taxpayer, and, since one can not sell things to himself, the sale was nugatory. Not having sold or exchanged the stock or otherwise terminated his ownership, the taxpayer is not entitled to a deduction for loss upon it in 1920. We must sustain the Commissioner in his disallowance of the taxpayer's deduction on account of this item.

3. Through a mistake in mathematics the Commissioner increased the taxpayer's net income for 1920 by $34,080.67. He concedes the error. A proper adjustment should be made in computing the deficiency for 1920.