## APPEAL OF CAROLINE S. McLEAN.

Docket No. 1534. Decided July 29, 1926.

Under the Revenue Act of 1918, the March 1, 1913, value of certain shares of stock should not be reduced by the amount of a tax-free distribution made thereon in 1917, in determining the gain derived from the sale thereof in 1919.

*Perry Schwartz, Esq.*, for the petitioner.
*Arthur J. Seaton, Esq.*, for the Commissioner.

Before MARQUETTE and MORRIS.

This is an appeal from the determination of a deficiency in income taxes for the calendar year 1919 in the sum of $32,351.30. The taxpayer alleges error in determining profit from the sale in 1919 of certain shares of stock in that the Commissioner reduced the 1913 value of such stock by the amount of a dividend paid in 1917 out of earnings accumulated prior to March 1, 1913.

### FINDINGS OF FACT.

On March 1, 1913, the taxpayer owned certain shares of stock in the Simpson Investment Co. which she had inherited prior thereto. Its value on that date was $351,280.63, which was in excess of its value at the date of acquisition. During 1917 she received a dividend on said stock of $60,000, which was declared and paid from earnings accumulated by the corporation prior to March 1, 1913, and held to be non-taxable by the Commissioner. During 1919 she sold the stock for $400,000. The Commissioner in computing the profit from the sale reduced the March 1, 1913, value of the stock by the $60,000 received in 1917 and found a profit of $108,719.37, while the taxpayer determined the profit to be the difference between the sale price and the March 1, 1913, value, or $48,719.37.

### OPINION.

MORRIS: The only question involved is whether for the purpose of determining the gain derived from the sale of certain shares of stock in 1919, their March 1, 1913, value should be reduced by the amount of a tax-free distribution received by the taxpayer in 1917. Section 202 of the Revenue Act of 1918 reads in part as follows:

SEC. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; * * *

The provision of the Revenue Act of 1918 relating to tax-exempt dividends is as follows:

SEC. 201. (a) That the term "dividend" * * * means (1) any distribution made by a corporation * * * out of its earnings or profits accumulated since February 28, 1913, * * *.

(b) * * * but any earnings or profits accumulated prior to March 1, 1913, may be distributed in stock dividends or otherwise, exempt from tax, after the earnings and profits accumulated since February 28, 1913, have been distributed.

The taxpayer contends that, under section 202 of the Revenue Act of 1918, the gain must be computed on the March 1, 1913, value and that any event happening between that date and the date of sale can have no effect upon the value as of that date. The fallacy of that broad statement is apparent, however, when applied to the case of a capital expenditure made after March 1, 1913, on property owned on that date. To deny a taxpayer the right to increase the March 1, 1913, value by the amount of that expenditure in computing the gain on a subsequent sale of the property would result in the taxing of capital. The same contention has already been presented to us and denied in the *Appeal of Even Realty Co.*, 1 B. T. A. 355, in which we used the following language:

We have no hesitation in holding that Congress in using the word *basis* meant nothing but *starting point* or *primary figure* in the computation of gain or loss and had no intention of restricting that computation to a simple subtraction of the basis from the selling price or vice versa. It expected the computation to include all adjustments necessary to a logical ascertainment of gain or loss. The only reason for using the word at all was to take care of the different situations arising when the property disposed of had been acquired (*a*) before and (*b*) on or after March 1, 1913. It fixed the starting point or primary figure of computation in the respective cases, but did not attempt to define every step of the computation under varying circumstances.

The Supreme Court, in the recent decision of *United States* v. *Flannery*, 268 U. S. 98, held that the March 1, 1913, value was merely a limitation upon the amount of the actual gain or loss that would otherwise have been taxable or deductible.

The rejection of this contention does not lead *ipso facto* to the Commissioner's conclusion. The question is not so easily disposed of. The theory upon which the Commissioner applies the amount of the tax-free distribution against the March 1, 1913, value of the stock is that such distribution is in effect a return of capital to the stockholder. Article 1549 of Regulations 45, as amended by T. D. 3557, provides:

In general, any distribution made by the corporation other than out of earnings or profits accumulated since February 28, 1913, is to be regarded as a return to the stockholder of part of the capital represented by his shares of stock, and upon a subsequent sale of such stock his gain will be the excess of the selling

price over the cost of the stock after applying on such cost the amount of such capital distribution. However, if such shares were acquired prior to March 1, 1913, and the fair market value as of such date was greater than the cost thereof after applying on such cost and value the amount of any such capital distribution, and was less than the sum received in distribution, the amount which is taxable is the excess over such value of the sum received in distribution.

Earnings accumulated by a corporation prior to the incidence of the income-tax law are capital to the corporation for the purposes of taxation, but that fact does not make such earnings capital to the stockholders as of March 1, 1913. The ownership of stock does not create an ownership in the assets of the corporation. The Supreme Court in *Rhode Island Hospital Trust Co.* v. *Doughton*, 270 U. S. 69, held:

> The owner of the shares of stock in a company is not the owner of the corporation's property. He has a right to his share in the earnings of the corporation as they may be declared in dividends arising from the use of all its property. In the dissolution of the corporation he may take his aliquot share in what is left, after all the debts of the corporation have been paid and the assets are divided in accordance with the laws of its creation, but he does not own the corporate property.

The Commissioner ascribes two meanings to the term " return of capital." One, he says, represents a return to the stockholder of his original investment, the actual amount of capital advanced by him; the other and the one which he contends is the correct meaning and applicable to this tax-free distribution, the return to the stockholder of the value of what he owned on March 1, 1913. He argues that what the stockholder owned on that date is capital (article 87, Regulations 45) and cites the *Appeal of James Dobson*, 1 B. T. A. 1082, in which the Board held that, after a corporation in liquidation has distributed all its earnings accumulated subsequent to March 1, 1913, any further distribution in 1918 must have been out of capital. It does not follow, upon the adoption of the second definition, however, that the receipt of such a tax-free distribution as is involved in this appeal is a return of capital. We are not here dealing with a partial or complete liquidation as was the Supreme Court in *Lynch* v. *Turrish*, 247 U. S. 221, in which it held that the amount received by a stockholder in liquidation of a corporation was not taxable to him where such amount did not exceed the March 1, 1913, value of the stock, although the distribution included cash from the realization after that date of appreciation in assets existing prior thereto; nor does the *Appeal of James Dobson*, *supra*, sustain the proposition contended for by the Commissioner in the instant appeal, as a liquidation was involved therein. The Commissioner has recognized the distinction in article 1548, of Regulations 45, as amended by T. D.

3206, between a liquidating dividend and an ordinary dividend, wherein it is provided:

A distribution in liquidation of the assets and business of a corporation, which is a return to the stockholder of the value of his stock upon a surrender of his interest in a corporation, is distinguishable from a dividend paid by a going corporation out of current earnings or accumulated surplus when declared by the directors in their discretion, which is in the nature of a recurrent return upon the stock.

This appeal involves a cash dividend paid by a going concern in the ordinary course of its business which, by the provisions of the Revenue Act in effect at the time of its distribution, was tax exempt. The question narrows itself down to the proposition whether such a distribution is a return of capital to the stockholder. If it is, the March 1, 1913, value of the stock should be reduced by that amount in determining the gain from a subsequent sale; if not, such reduction should not be made under the Revenue Act of 1918, which contains no provision relative thereto.

That an ordinary cash dividend is inherently income to a stockholder does not need extended argument. It is a gain derived from capital and as such is income within the meaning of that term as defined in *Eisner* v. *Macomber*, 252 U. S. 189. In *United States* v. *Phellis*, 257 U. S. 156, 171, the court used the following language:

It is the appropriate function of a dividend to convert a part of the surplus thus accumulated from the property of the company into property of the individual stockholders; the stockholder's share being thereby released to and drawn by him as profits or income derived from the company. That the distribution reduces the intrinsic capital value of the shares by an equal amount is a normal and necessary effect of all dividend distributions—whether large or small and whether paid in money or in other divisible assets—but such reduction constitutes the dividend none the less income derived by the stockholder if it represents gains previously acquired by the corporation.

A dividend is none the less income to the stockholder though a distribution of earnings accumulated by the corporation prior to March 1, 1913, and is taxable in the absence of express statutory exemption. In *Lynch* v. *Hornby*, 247 U. S. 339, the court said:

Dividends are the appropriate fruit of stock ownership, are commonly reckoned as income, and are expended as such by the stockholder without regard to whether they are declared from the most recent earnings, or from a surplus accumulated from the earnings of the past, or are based upon the increased value of the property of the corporation. The stockholder is, in the ordinary case, a different entity from the corporation, and Congress was at liberty to treat the dividends as coming to him *ab extra*, and as constituting part of his income when they came to hand.

Hence we construe the provision of the act that " the net income of a taxable person shall include gains, profits, and income derived from * * * interest, rent, dividends, * * * or gains or profits and income derived from any source whatever " as including (for the purposes of the additional tax) all dividends declared and paid in the ordinary course of business by a corpo-

ration to its stockholders after the taking effect of the act (March 1, 1913), whether from current earnings or from the accumulated surplus made up of past earnings or increase in value of corporate assets, notwithstanding it accrued to the corporation in whole or in part prior to March 1, 1913.

See also *Eisner* v. *Macomber, supra;* and *Peabody* v. *Eisner*, 247 U. S. 347.

It was argued in the *Hornby* case that the dividends were not taxable because the 1916 Act had excluded such dividends apparently on the theory that they were capital and not income. Upon that interpretation the court said:

In short the word "dividends" was employed in the act as descriptive of one kind of gain to the individual stockholder; dividends being treated as the tangible and recurrent returns upon his stock, analogous to the interest and rent received upon other forms of invested capital.

In the more recent Income Tax Acts, provisions have been inserted for the purpose of excluding from the effect of the tax any dividends declared out of earnings or profits that accrued prior to March 1, 1913. This originated with the Act of September 8, 1916, and has been continued in the Act of October 3, 1917. We are referred to the legislative history of the Act of 1916, which it is contended indicates that the new definition of the term "dividends" was intended to be declaratory of the meaning of the term as used in the 1913 Act. We cannot accept the suggestion, deeming it more reasonable to regard the change as a concession to the equity of stockholders granted in the 1916 Act, in view of constitutional questions that had been raised in this case, in the companion case of *Lynch* v. *Turrish*, and perhaps in other cases. These two cases were commenced in October, 1915; and decisions adverse to the tax were rendered in the District Court in January, 1916, and in the Circuit Court of Appeals September 4, 1916.

The provisions in the 1916 and subsequent Acts exempting such dividends did not have the effect of changing their fundamental nature and converting into capital that which was income. Tax exemption on certain kinds of income does not change that income into capital. The taxpayer's capital in the instant appeal consisted of shares of stock having a certain value on March 1, 1913. The proposition that the receipt of income derived from that capital constitutes a return of capital is self-contradictory. As the distribution was income, the amount thereof can not be applied against the basis in determining the gain on a subsequent sale in the absence of express statutory authority. The criterion whether the March 1, 1913, value of property should be reduced by the receipt of income can not be the taxability or non-taxability thereof; otherwise it would follow that such reduction should be effected by the receipt of interest or rent where the recipient's personal exemption exceeds his net income, a conclusion which is at variance with our understanding of the principles of income-tax legislation.

The Commissioner's position is not only unsound in principle, but the legislative history of the dividend and gain and loss provisions of

the several revenue acts supports the conclusion hereinabove set forth. The 1913 Act did not provide for the exemption of dividends declared and paid after March 1, 1913, out of earnings and profits accumulated prior thereto. Such distributions were held taxable under that Act in *Lynch* v. *Hornby, supra*. Beginning with the 1916 Act and continuing through the various acts up to and including the Revenue Act of 1926, the term " dividends " was held to mean any distribution made by a corporation out of its earnings or profits accumulated since February 28, 1913, and starting with the Revenue Act of 1916, as amended by section 1211 (5) of the Revenue Act of 1917, earnings and profits accumulated prior to March 1, 1913, might be distributed exempt from tax after the earnings and profits accumulated since February 28, 1913, had been distributed. Prior to the Revenue Act of 1921 there was no provision relating to the reduction of cost or March 1, 1913, value by the amount of a tax-free distribution in determining the gain or loss on a subsequent sale of the stock. When the bill which later became the Revenue Act of 1921 was first introduced in the Senate as passed by the House, section 201 (c) was practically the same as the 1918 Act and provided that amounts distributed in liquidation of a corporation should be applied against the basis and any excess treated the same as other gains. During the course of its consideration, an amendment was made proposing to apply against the basis provided in section 202 any tax-free distribution for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of the stock. In the discussion which followed it was pointed out that the purpose of the amendment was to stop a leak in the 1918 Act. Senator Kellogg discussed the proposed change in connection with his understanding of the 1918 Act in the following language (61 Cong. Rec., pt. 6, p. 6482) :

In other words, if profits made prior to March 1, 1913, were thereafter distributed, they would be automatically charged against the value of the stock on March 1, 1913, by the amount of dividends he receives from profits without any regard to the market value of the stock. If the stockholder sold his stock he would necessarily pay a tax on the distribution of profits made prior to March 1, 1913. That is all there is of it. It does not make any difference in the market value of the stock as the law now stands, if the stockholder owns stock, whether he buys it or has owned it for many years. They take the market value of his stock on March 1, 1913, and if he thereafter sells that stock at a profit he has to pay the tax on it and that is perfectly proper.

But the amendment proposed automatically reduces the market value of his stock on March 1, 1913, by the amount of dividends he receives from profits made before that date so as to automatically increase his taxes to that extent. In other words, as to the stockholder who must sell his stock, it taxes his income made prior to March 1, 1913 ; as to the stockholder who is able to keep his stock, it is not taxed. It seems to me that is all there is of it. I do not think that should be the rule of law.

The proposed amendment was voted down and the bill as finally passed provides:

Sec. 201. * * * (b) * * * If any such tax-free distribution has been made the distributee shall not be allowed as a deduction from gross income any loss sustained from the sale or other disposition of his stock or shares unless, and then only to the extent that, the basis provided in section 202 exceeds the sum of (1) the amount realized from the sale or other disposition of such stock or shares, and (2) the aggregate amount of such distributions received by him thereon.

The Revenue Act of 1924 added the additional provision, which has been carried into the Revenue Act of 1926, that such tax-free distributions shall be applied against and reduce the basis of the stock for the purposes of determining gain as well as loss. Section 201(b). This provision appears for the first time in the Revenue Act of 1924 and its absence in the prior Acts, particularly in the Revenue Act of 1921, when a persistent effort was made to have it included therein, and the overwhelming vote by which it was defeated could have carried an express provision prohibiting such reduction had it been the opinion that the prior Act required the reduction without any reference thereto, indicates to our minds that Congress did not intend that such a reduction should be made under those Acts, otherwise the provision in the two most recent Acts would have been unnecessary.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*