ARTHUR CURTISS JAMES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2509.   Promulgated October 3, 1928.

*Robert E. Coulson, Esq.*, and *Oscar W. Underwood, Jr., Esq.*, for the petitioner.

*John D. Foley, Esq.*, and *Joseph K. Moyer, Esq.*, for the respondent.

768

OPINION.

PHILLIPS: The respondent determined that the dividends received by the petitioner in 1918 from Phelps Dodge Corporation were paid entirely from earnings accrued subsequent to February 28, 1913, and subject to surtax. At the time this determination was made and the deficiency letter mailed to the petitioner, the earnings of that corporation for the year had not yet been finally determined by the Commissioner. Subsequently these earnings were determined to be the amounts shown above, and in order to sustain the deficiency asserted against this petitioner it became necessary for the respondent to urge three contentions, each of which is contrary to the position taken by the respondent in his regulations and rulings in other cases, as follows:

(1) That the earnings and profits of the subsidiaries of Phelps Dodge Corporation not paid over to the parent corporation are available for distribution to its stockholders within the contemplation of section 201 of the Revenue Act of 1918.

(2) That in determining the amount of earnings and profits available for distribution to stockholders of Phelps Dodge Corporation under section 201 of the Revenue Act of 1918, distributions made by Moctezuma Copper Co., a subsidiary, to Phelps Dodge Corporation in 1918 in excess of the earnings and profits of Moctezuma Copper Co. accumulated since February 28, 1913, ought to be included.

(3) That Federal income and profits taxes for 1918 are not a properly accruable expense in determining the earnings and profits of Phelps Dodge Corporation available for distribution to its stockholders under section 201 of the Revenue Act of 1918.

(1) The petitioner alleges and the answer admits that it is the consistent and well-established administrative practice of the respondent, in making determinations as to the source of the funds from which distributions are made, under section 201(b) of the Revenue Act of 1918 and corresponding sections of subsequent acts, to consider as part of the earnings or profits of the parent company the earnings or profits of the subsidiary only to the extent that such earnings or profits of subsidiaries are actually paid over to the parent company by way of dividends or otherwise during the accounting period in question. Counsel for respondent urge that since Phelps Dodge Corporation owned all of the capital stock of its subsidiaries, the general rule which has been consistently followed by the Commissioner does not apply; that we should disregard the corporate entities and, under *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, and *Gulf Oil Corporation* v. *Lewellyn*, 248 U. S. 71, hold that all earnings of the subsidiary were available for distribution to the stockholders of the parent concern and that the dividends were in contemplation of law paid in part from the undistributed earnings of the subsidiary. We do not believe that the decisions cited go to the extent urged by counsel. The court made it clear that those cases turned upon their special facts. One of such facts, which is absent here, was that the earnings in question accrued prior to the effective date of the Constitutional amendment and were to all intents and purposes in the possession and control of the parent corporation before such date so as to constitute, in substance, a part of its capital on that date; furthermore, the amounts in question were not ordinary dividends but extraordinary in character and amount. See *Lynch* v. *Turrish*, 247 U. S. 221, and *Lynch* v. *Hornby*, 247 U. S. 339, decided on the same date as *Southern Pacific Co.* v. *Lowe*, *supra*, in which the court notes a distinction between ordinary and recurrent dividends and dividends in the nature of a distribution of capital assets, although such assets may represent earnings of prior years. If we were inclined to construe these decisions as holding that the earnings of the subsidiaries were income to the parent when earned to the extent that they could not thereafter constitute income to the parent, it would still be necessary to take one further step and hold

that such earnings were so completely the property of the parent that they could be used by it to pay dividends to its stockholders. We are not willing either to so construe these decisions or to take the additional step which would be required. The earnings of the subsidiaries should be considered only to the extent to which they have been distributed as dividends to the parent company.

(2) During 1918 the Phelps Dodge Corporation received $3,120.000 in dividends from the Moctezuma Copper Co. A portion of that amount was paid to the Phelps Dodge Corporation from earnings and profits accumulated by the Copper Company since February 28, 1913, and the balance was paid from sources other than earnings and profits accumulated since February 28, 1913.

Counsel for the Commissioner apparently contended at the hearing that in determining the earnings of the Phelps Dodge Corporation accrued subsequent to February 28, 1913, we should include the total amount of the dividend of the subsidiary, whatever the source might be. This position is contrary to that heretofore taken by the respondent. See Treasury Decision 3499; also the opinion of the Attorney General dated June 21, 1923. This contention was not urged in the brief filed by counsel.

The distributions made by the subsidiary to the parent in 1918 from sources other than earnings accrued subsequent to February 28, 1913, are to be regarded for tax purposes as in the nature of a return to the parent of a part of the amount invested or of the March 1, 1913, value of its investment and are not a part of the earnings or profits of the parent; at least until there is a gain to the parent by reason of a return to it of amounts in excess of the cost or March 1, 1913, value of the stock. We do not have presented the question whether in the latter case such dividends could still be distributed to the stockholders of the parent free from tax. In the present proceeding there should be included in the earnings of the Phelps Dodge Corporation for 1918 only so much of the dividends paid by the Moctezuma Copper Co. as represented distributions from earnings accrued after February 28, 1913.

(3) In connection with the third question raised, counsel for respondent points out that we have held that the invested capital of a corporation may not be reduced, in determining the extent to which a dividend is paid from current earnings of a year, by a " tentative " tax theoretically set aside out of such earnings prorated over such year (*L. S. Ayers & Co.*, 1 B. T. A. 1135), and suggests that we might wish to apply a similar rule in determining the amount of earnings available for distribution, although expressly refraining from urging that we should do so. In that case we were concerned with computations of the invested capital of corporations, which is purely a statutory concept. In construing the statutory definition of invested

capital, we held that earnings of the current year available for dividends should not be decreased on account of an estimated tax later to accrue, on the ground that to do so would be to take into account in the computation of invested capital an element of expense or outgo of the current year, while forbidden by the statute to offset that element by the income of the year. In this proceeding, we are not concerned with the statutory concept of invested capital, but must determine the amount of earnings and profits of the Phelps Dodge Corporation which were available for distribution to stockholders on the date of distribution. Since the earnings to each of these dates is unknown, the Commissioner is compelled to ascertain the earnings for the entire year and prorate them. Applying the reasoning of the court in *United States* v. *Anderson*, 269 U. S. 422, we are of the opinion that the Federal income and profits taxes for 1918 are properly to be deducted in determining the earnings and profits of the year.

The parties are also unable to agree whether the date of declaration or the date of payment is to control in computing the earnings available for distribution. Following the decision of the court in *Mason* v. *Routzahn*, 275 U. S. 175, the Board decided in *Emily D. Proctor*, 11 B. T. A. 235, that the situation under the Revenue Act of 1918 was the same as that presented to the court under the Revenue Act of 1917, and that the date of payment controlled.

At the hearing, petitioner conceded that there should be added to his taxable income for the year 1918, as shown by his return, the amount of $18,750, received as dividends from the United Verde Extension Mining Co. which petitioner had treated in his return as nontaxable. The Commissioner and the petitioner conceded at the hearing that an item of $332.11, representing tax withheld at the source, should be added to the taxable income of the petitioner as shown by his return, and the same item of $332.11 deducted from the total tax payable by the petitioner on the basis of the recomputation of its income as shown by the evidence in this proceeding.

It appears that in computing petitioner's income the Commissioner included at their par value the Liberty bonds received from the Phelps Dodge Corporation as a part of the dividend. At the hearing counsel conceded that these bonds should have been valued at their market value when received.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

STERNHAGEN and ARUNDELL dissent.

GREEN, dissenting: The revenue acts provide that after the earnings and profits accumulated by a corporation subsequent to February 28, 1913, have been distributed, the earnings and profits accumulated

prior to March 1, 1913, are, upon distribution to its stockholders, tax exempt. In the case here under consideration the stockholder was a corporation and the question is whether the tax-exempt dividends received by it are tax exempt in the hands of its stockholders when distributed.

In the *Appeal of Caroline S. McLean*, 4 B. T. A. 487, following the rule laid down in *Lynch* v. *Hornby*, 247 U. S. 339, we said:

A dividend is none the less income to the stockholder though a distribution of earnings accumulated by the corporation prior to March 1, 1913, and is taxable in the absence of express statutory exemption.

In that case we also said:

The provisions in the 1916 and subsequent acts exempting such dividends do not have the effect of changing their fundamental nature and converting into capital that which was income.

Prior to the adoption of the majority opinion herein I had thought this question settled. In that opinion, however, it is said:

The distributions made by the subsidiary to the parent in 1918 from sources other than earnings accrued subsequent to February 28, 1913, are regarded for tax purposes as in the nature of a return to the parent of a part of the amount invested or of the March 1, 1913, value of its investment and not as a part of the earnings or profits of the parent; at least until there is a gain to the parent by reason of a return to it of amounts in excess of the cost or March 1, 1913, value of the stock.

The rule thus announced is predicated upon the theory that that which was received by the stockholder of the subsidiary corporation was not income, and to me it seems that such a rule is *contra* to that announced in *Lynch* v. *Hornby, supra,* and the *Appeal of McLean, supra.*

In the prevailing opinion it is said:

The earnings of the subsidiaries should be considered only to the extent to which they have been distributed as dividends to the parent.

This I believe to be a correct statement of the law. The parent corporation here had no interest in the earnings of its subsidiary until distributed, for as was said in *Rhode Island Hospital Trust Co.* v. *Doughton*, 270 U. S. 69, " The owner of shares of stock in a company is not the owner of the corporation's property." If the *Hornby* and *McLean* cases, *supra*, are right, it follows that all that the subsidiary distributed as dividends to the parent was income (in part tax exempt) to the parent in the year in which the dividend was paid.

If the dividends of the subsidiary are income to the parent corporation, the case falls squarely within section 201 (b) of the Revenue Act of 1918, which reads as follows:

(b) Any distribution shall be deemed to have been made from earnings or profits unless all earnings and profits have first been distributed. Any distri-

bution made in the year 1918 or any year thereafter shall be deemed to have been made from earnings or profits accumulated since February 28, 1913, or, in the case of a personal service corporation, from the most recently accumulated earnings or profits; but any earnings or profits accumulated prior to March 1, 1913, may be distributed in stock dividends or otherwise, exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed.

Such income to the parent corporation may not be said to have been " accumulated before March 1, 1913," and may not therefore be distributed by it tax exempt for it is only earnings and profits accumulated prior to that date which may be so distributed.

Ordinarily those attempting to support the rule announced in the majority opinion urge that once income is impressed with the exemption, it retains its exempt status thereafter. Such an argument leads to the conclusion that if the subsidiary distributes a depletion or depreciation reserve, or income from tax-exempt bonds, such distribution may be, by the parent, distributed tax exempt. The same rule should apply in all cases and it should be held that exempt income is not *ear marked* and that it is not so impressed with the exempt status that its recipient may distribute it tax free.

Under the regulations and the later revenue acts, the basis to be used in the computation of gain or loss on sale or other disposition of the stock is reduced by the amount of the tax-exempt distribution. If the majority rule is put into effect, a peculiar advantage results to the stockholder of the parent corporation in that he receives the pre-March 1, 1913, earning of the subsidiary tax exempt and at the same time his corporation has the same advantage, offset it is true, by the reduction in basis. Surely such a result was not within the contemplation of Congress, and that is the test, for the exemption is not inherent but is a matter solely within the power of Congress. See *Lynch* v. *Hornby, supra*.

In my opinion the dividends distributed to petitioner herein by the parent corporation are not tax exempt and are in no wise affected by the fact that the funds from which they were paid were received by the parent corporation tax exempt.

SMITH, LOVE, and MORRIS agree with this dissent.