WILLIAM H. MONK, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

R. J. MILLING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EARL R. GASTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 52044–52046.   Promulgated December 14, 1933.

*Geo. E. H. Goodner, Esq.*, and *Walter K. Smith, Esq.*, for the petitioners.
*W. F. Wattles, Esq.*, for the respondent.

558

OPINION.

LANSDON: The sole question here is whether the distributions of July 14, 1927, were ordinary or liquidating dividends. In conformity with options and contracts each company sold its assets to Stores on July 12, 1927, and on that date ceased business. On July 14 the purchasers made the cash payments provided for in the contracts of sales. On July 12 each company declared a dividend as set out above, payable as and when funds became available. On July 15 such dividends were paid in cash out of receipts from the sale of capital assets and in amounts which exceeded the alleged surplus of each corporation. Since final liquidation of both companies was accomplished on September 29, 1927, by the distribution of the preferred stock received by each from Stores, and without any further distributions of cash, it is evident that the amounts received from the purchaser on July 14 were first applied to the payment of obligations of Gaston and Monk and that the remainder thereof was distributed on July 15, 1927. The respondent has determined that under the terms of the option and sales contracts, and in the light of what was actually done, Gaston and Monk were each in liquidation from July 12, 1927, and that such liquidation was accomplished by the distribution of cash and preferred stock on July 15 and September 29, 1927, on which latter date both corporations were dissolved. This determination is in effect that the distribution of July 15 was " one of a series of distributions in complete cancellation or redemption of all or a portion of its stock ", as set out in article 1549 of Regulations 69. Petitioners contend that no steps in liquidation were taken until September 29, 1927, and that within the meaning of section 201 (c) of the Revenue Act of 1926 the distributions of cash on July 15 were ordinary dividends to the extent of the surplus then available for distribution and subject only to surtax.

In construing almost identical provisions of the Revenue Act of 1918 in a case involving the question at issue here, *Hellmich* v. *Hellman*, 276 U.S. 233, the Supreme Court said:

It is true that if section 201 (a) stood alone its broad definition of the term " dividend " would apparently include distributions made to stockholders in the liquidation of a corporation—although this term, as generally understood and used, refers to the recurrent return upon stock paid to stockholders by a going corporation in the ordinary course of business, which does not reduce their stockholdings and leaves them in a position to enjoy future returns upon the same stock. (See *Lynch* v. *Hornby*, 247 U.S. 339, 344–346, and *Langstaff* v. *Lucas* (D.C.) 9 Fed. (2d) 691, 694.)

However, when section 201 (a) and section 201 (c) are read together, under the long-established rule that the intention of the lawmaker is to be deduced from a view of every material part of the statute (*Kohlsaat* v. *Murphy*, 96 U.S. 153, 159) we think it clear that the general definition of a dividend in section 201 (a) was not intended to apply to distributions made to stockholders in the liquidation of a corporation, but that it was intended that such distributions should be governed by section 201 (c) which, dealing specifically with such liquidation, provided that the amounts distributed should "be treated as payments in exchange for stock" and that any gain realized thereby should be taxed to the stockholders "as other gains or profits." This brings the two sections into entire harmony and gives to each its natural meaning and due effect. The Treasury Regulations correctly interpreted the Act as making section 201 (a) applicable to a distribution made by a going corporation to its stockholders in the ordinary course of business, and section 201 (c) applicable to a distribution made to stockholders in liquidation of the corporation. And this is in accord with the rulings of the Board of Tax Appeals. (*Appeal of Greenwood*, 1 B.T.A. 291, 295; *Appeal of Chandler*, 3 B.T.A. 146, 149.)

To prevail here the petitioners, under the rule set out above, must show that the distributions in question were made by Gaston and Monk as going concerns in the ordinary course of business. In our opinion no such showing has been made. On July 12 each sold all of its assets and from that date engaged in no business operations. It is, therefore, obvious that funds for the payments of the dividends then declared never could be available from surplus resulting from active operations. As a matter of fact the record clearly indicates that the payments, when made on July 15, were from the receipts from the sale of capital assets. In *Tootle* v. *Commissioner*, 58 Fed. (2d) 576, in discussing this identical question the court said:

It is difficult to see how a part of a total price for all assets * * * can be segregated and called "surplus" or "earnings". It is purchase price and nothing else.

Petitioners argue at great length that the respondent has merely assumed that the distributions in question were made after the two companies in question had decided to discontinue business and liquidate their assets. They also contend that no intention to liquidate is disclosed by the record. What petitioners characterize as a mere assumption by the respondent is, in fact, an authoritative determination of the Commissioner upon which the deficiencies are based and must be regarded as correct until overcome by evidence. It is true that neither corporation took any formal action preparatory to liquidation, but each had sold all its assets and discontinued its business at the date of the distribution in question and each was finally liquidated and dissolved on September 29, less than three months after the contract to sell its assets had been fully accomplished. In these circumstances we think the acts of each company indicated its intention to liquidate and that the distributions on

July 15, 1927, were "one of a series of distributions by a corporation in complete cancellation or redemption of its stock." This being true, it is not material that no stock was canceled or redeemed on July 15 when the cash distributions were made by Gaston and Monk. In our opinion the evidence adduced by the petitioner is not sufficient to overcome the presumption of correctness which attaches to the determination of the respondent. *James P. Gossett*, 22 B.T.A. 1279.; affd., 59 Fed. (2d) 365; *Tootle* v. *Commissioner, supra; S. J. Blumenthal*, 12 B.T.A. 1205; *S. B. Dandridge*, 11 B.T.A. 421.

*Decision will be entered for the respondent.*