MARGARET P. DALY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65213.   Promulgated July 17, 1935.

*C. J. McGuire, Esq.*, and *J. Marvin Haynes, Esq.*, for the petitioner.

*T. M. Mather, Esq.*, for the respondent.

#### OPINION.

LEECH: Respondent has determined a deficiency in income tax for the calendar year 1929 of $6,008.41.  Petitioner contends that the tax for the year in question has been overpaid in the amount of $7,134.17.

Only two issues are submitted for our determination: (a) the inclusion by respondent in taxable income of an amount representing the market value of certain rights to subscribe to the bonds of the American Telephone & Telegraph Co., such rights having been received by petitioner as a stockholder of that company, and (b) the inclusion in income of $45,038.66 received by petitioner as a stockholder from the Cinco Minas Co.

The facts are stipulated and are set out here only to the extent necessary to an understanding of the issues.  The question raised with respect to stock rights received by petitioner requires little discussion.  Petitioner exercised these rights and did not dispose of them.  Under such circumstances the issue is controlled by our decision in *T. I. Hare Powel*, 27 B. T. A. 55, and *Thomas W. White*, 29 B. T. A. 1272.  We hold that the value of these rights did not represent taxable income to petitioner.

The second issue arises from respondent's including in petitioner's taxable income for 1929, $45,038.66 of a total distribution of $56,666.66, made to petitioner by the Cinco Minas Co. in 1929 as the owner of 1,416⅔ shares of the capital stock of that company.  Respondent has determined that the payment was made from surplus to the extent included in income by him.  Petitioner contends that the company had no surplus at the time of distribution and that it was made from a depletion reserve, based upon discovery value, set up out of earnings.  The parties are in agreement as to the facts

and figures. Their dispute is upon the correct method of computing the undistributed surplus of the company earned subsequent to March 1, 1913, and available for dividend distribution.

It is agreed that the company was entitled to discovery value upon certain of its mines, developed subsequent to March 1, 1913, and that depletion was properly reserved from earnings in subsequent years. In years following those from the earnings of which depletion allowances were reserved, the company had certain losses and then in still later years earnings were realized.

Respondent, in computing corporate surplus available for dividend distribution in 1929, has applied those corporate losses against existing surplus to the extent of that surplus and has applied the balance of such loss in each case to reduce the undistributed reserve for depletion. The net earnings of the later years he has treated as surplus without applying any portion of them to restore the depletion reserve. Petitioner computed existing surplus by charging to that account only the amount by which net earnings exceeded the undiminished reserve for depletion. It is her contention that the losses, incurred in excess of the surplus balance, should be used only to create a deficit in surplus or, if applied against the depletion reserve, the latter should be restored from later earnings and only the excess of such earnings over the amount used in such restoration, should be charged to earned surplus.

Stating the matter simply, it is petitioner's contention that the reserve for depletion based upon discovery value constituted capital, whereas respondent contends that it represents merely an appreciation in value which Congress has permitted the corporation to realize free of tax and the fact that under section 115 (d) of the Revenue Act of 1928, it is permitted to be distributed free of tax to the corporate stockholders under certain conditions in no wise changes its basic character as earnings or profits.

Section 115 of the Revenue Act of 1928 defines the term "dividend" as "any distribution made by a corporation to its shareholders, whether in money or other property, out of its earnings or profits accumulated after February 28, 1913" and then provides:

SEC. 115. (b) *Source of distributions.*—For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the basis of the stock provided in section 113.

We have considered the question of whether a depletion reserve based on discovery value represents earnings or profits. In *Charles*

*F. Ayer*, 12 B. T. A. 284, arising under the 1921 Act, we held that such a reserve, substantially in excess of the cost or March 1, 1913, value, represented, to the extent of such excess, earnings or profits accumulated subsequent to 1913 and distributions therefrom represented taxable dividends.

The present question arises under the Revenue Act of 1928, section 115 (d) of which provides:

SEC. 115. (d) *Other distributions from capital.*—If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings or profits, then the amount of such distribution shall be applied against and reduce the basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. The provisions of this subsection shall also apply to distributions from depletion reserves based on the discovery value of mines.

It is the contention of petitioner that this provision, which permits the distribution, free of tax in the hands of the stockholders, of so much of a depletion reserve of this character as is not in excess of the cost basis of the stock and taxes the excess as gain and not a dividend, has the effect of making such a depletion reserve, for all purposes, capital of the corporation. It is further urged that a reserve for depletion is, in fact, capital, being merely a return of the capital asset and not gain in the ordinary sense.

A question similar in many respects was presented in *Helvering* v. *Canfield*, 291 U. S. 163, involving distributions made in 1928, by a corporation having a substantial surplus at March 1, 1913. Subsequent to 1913 there were losses in two years, followed by yearly profits realized to the date of the distribution. In that case it was urged that the surplus existing at March 1, 1913, free of tax by legislative grace, should be considered as capital which, if reduced by subsequent losses, was entitled to restoration from later earnings and that only the excess of such earnings, after such restoration, constituted surplus accumulated subsequent to March 1, 1913, subject to distribution as dividends. The same argument is made here as to amounts set aside from earnings. In disposing of this contention in the *Canfield* case, the Court said:

The argument that the surplus of March 1, 1913, constituted capital is unavailing. We are not here concerned with capital in the sense of fixed or paid-in capital, which is not to be impaired, or with the restoration of such capital where there has been impairment. No case of impairment of capital is presented. We are dealing with a distribution of accumulated profits. Nor is it important that the accumulated profits, as they stood on March 1, 1913, constituted capital of the company as distinguished from the gains or income which the company subsequently realized. When a corporation continued in business after March 1, 1913, the dividends it later declared and paid to its stockholders, whether out of current earnings or from profits accumulated prior

to that date, constituted income to the stockholders, and not capital, and were taxable as income if the Congress saw fit to impose the tax. *Lynch* v. *Hornby,* 247 U. S. 339. The provision of the Act of Congress under consideration was a "concession to the equity of stockholders" with respect to receipts as to which they had no constitutional immunity. There is no question here of the receipt of "capital."

We think the reasoning of the opinion in the *Canfield* case applies with equal, if not greater force, to the situation present here. There the question involved the surplus realized and existing at March 1, 1913, while here we have gains representing appreciation of properties after that date and realized subsequent thereto, taxable both to the corporation when realized and to the stockholder when distributed except for the fact that Congress has exempted them from tax by granting what is, in the language of the Court in the cited case, "a 'concession to the equity of the stockholders' with respect to receipts as to which they had no constitutional immunity."

As in the *Canfield* case, with respect to accumulations of surplus, we can see in the statutory provisions here exempting depletion allowances based on discovery value from tax to the corporation, no intent on the part of Congress to ascribe to such depletion, in excess of cost, the character of invested capital as a fixed basis upon which corporate net surplus is to be computed. As the Court said in that case:

\* \* \* To attribute to the accumulated profits or surplus of March 1, 1913, embarked in a continued business, such a static condition is to ignore the course of business and to impute to the Congress an intention to consider, for tax purposes, the existence of that surplus as still continued notwithstanding its actual diminution or exhaustion. Such an intention to disregard realities so as to afford immunity from a tax is not lightly to be ascribed to the taxing authority. \* \* \*

In our opinion, this rule is applicable to the situation now before us. The allowances for depletion, based upon discovery value and set aside out of the earnings, are, to the extent that they exceed cost, surplus of the corporation which has been accorded nothing more than tax exemption upon its realization. *Charles F. Ayer, supra.*

Respondent's determination of corporate surplus available for distribution in 1929 is correct.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*