UNITED STATES v. ALPHA PORTLAND CEMENT CO.

(District Court, E. D. Pennsylvania. April 3, 1919.)

No. 4072.

1. JURY ⬤⇒31(7)—JURY TRIAL—JUDGMENT NOTWITHSTANDING VERDICT.
     Under the seventh amendment to the federal Constitution, preserving the right to trial by jury, a federal District Court cannot enter judgment notwithstanding the verdict.

2. NEW TRIAL ⬤⇒70—WHEN GRANTED.
     If defendant corporation's book entries, reciting a profit on property sold another corporation, sustain a verdict for the income tax on the profit, a new trial will not be granted because of the court's opinion that no income was actually received; the entries being merely a matter of bookkeeping incidental to a corporate reorganization.

3. NEW TRIAL ⬤⇒159—DETERMINATION.
     Although the court entertains serious doubt whether evidence sustains verdict for government in action to collect income taxes, a new trial will be denied, and judgment pro forma entered on the verdict, in order to preserve the government's rights under the verdict pending appeal.

At Law. Action by the United States against the Alpha Portland Cement Company. Verdict for the United States, and defendant moves for a new trial. Rule discharged, and judgment entered on the verdict.

See, also, 242 Fed. 978.

Francis Fisher Kane, U. S. Atty., and Ernest Harvey, Asst. U. S. Atty., both of Philadelphia, Pa.

William S. Furst, of Philadelphia, Pa., and Louis H. Porter, of New York City, for defendant.

DICKINSON, District Judge. This case belongs to what, in the administration of the income tax laws, will doubtless prove to be a large class. The legal situation presented is, however, unique. The disposition which, under all its features, it has been decided to make of it, is an unusual one. Because of this an explanation is in order, in the hope that it may afford an excuse, if not a justification, for the

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

course taken. If our system of appellate practice provided an advisory branch, as well as a substantive law and procedure branch, the questions involved in this case could be referred to the appellate tribunal for decision, with all the acquired rights of both parties fully preserved. As it is, we know of no way of dealing with the case, in accordance with established practice, than to deal with it through the the power of the court to grant a new trial. A verdict had been rendered in favor of the plaintiff. This fact finding is vital to the plaintiff's case. It may be controlling of the judgment, or the point of law involved may control.

[1] The constitutional principle declared in Slocum v. New York, 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029, denies to the court the power to enter judgment n. o. v. Counsel view this also as a denial of the power to enter judgment on a point of law reserved. Ordinarily, therefore, the duty of the trial court is either to enter judgment on the verdict, thus giving its sanction to the fact finding, or to grant a new trial, thereby depriving plaintiff of the benefit of the fact finding in its favor. When the action of the court is dictated by a consideration of the fact merits, no legal injustice is done. When, however, it is dictated wholly by the judgment of the court upon the law of the case, and a new trial is granted, if there is error, the harm done the party in whose favor the verdict was rendered may be irreparable. Exactly this situation is here presented.

[2] We think the plaintiff is entitled (for whatever value it may have) to a definite finding by this court, which is now made, that if an issue of fact fairly arises in this case, and is for the jury, the verdict should be allowed to stand undisturbed by the fact that the trial judge, if a member of the jury, would have favored a different verdict. This means that, if there was no error in the law rulings made, the verdict would be allowed to stand. We would not exercise the power to grant a new trial because, in the judgment of the trial judge, the verdict was against the weight of the evidence. The reason for this attitude of the trial judge toward the verdict will later appear. Its further meaning practically is that, unless the defendant is entitled to judgment as matter of law, the verdict should stand.

This really takes us back to the former stage of the case, when the rule for judgment was dismissed. The conditions, however, are not quite the same. Judgment in favor of the plaintiff was then refused. Judgment was, we think, properly refused; but, whatever opinion had been entertained of the legal merits of the controversy, judgment would have been refused out of deference to the policy of deciding all questions as trial questions when they can be so ruled, notwithstanding the fact that they might also be decided as questions arising out of the pleadings, unless the parties had agreed to the judgment entered being a final judgment. The ruling then made, therefore, means no more than that the questions raised were trial questions. Nearly all legal reasoning is part of an artificial system. The results of any artificial system of logic should always be check-

257 F.—28

ed up by the test of a common-sense view of the results which have been reached, and then by the test of whether they are in accord with decided cases.

Let us attempt to apply these tests after first getting into our minds the case to which the test is to be applied. The more broadly the facts are stated, the clearer is our view of them. When we attempt to go into the details, the effect is apt to be confusing. It will also help if the statement of the facts is limited to a statement of the substantial facts, although strictly and technically some of them are not the facts.

These substantial facts are that a corporation existed, the capital of which it was desired to have increased without any fresh contribution of capital being made by any one. The company owned a property which it had bought at a price, and which was carried on its books as part of its assets at its cost. The property possessed what may be called the quality of elastic value. As such transactions are viewed, it could be considered as having a value of many times what had been paid for it. The plan devised was to organize another company with the desired capital, and have the first company sell to the second the property, at a valuation equal to the capital of the latter, which paid for the property by the issue of its stock. The two companies were then merged into the present company, which, under the agreement of merger, was given the nominal capital it was planned to have, and the new company assumed all the obligations of the old. What actually and in fact resulted is too obvious to require statement. The bookkeeping result was, however, very different. The facts thus manufactured and made to appear were that the second company, by the formal action of its board of directors and its executive officers, offered to buy of the first company the property mentioned, at a cash price, for real money. This offer the first company, after like formal corporate action, accepted. A conveyance was made on the basis of this consideration having been paid and received. The books of the second company stated that it had paid actual money for the property. The books of the first company showed a corresponding receipt of the same moneys, and, in addition, showed a clear statement of the large profit which had accrued to it. In point of fact, at no time was a dollar handled by any one, or in sight. The facts were all manufactured bookkeeping facts. The statement made is not technically and strictly accurate, but it presents the transaction as in substance it really was.

The argument of counsel for the United States, ably and successfully presented to the jury, was in effect that when a person says he has received moneys by way of profit or income, and states the amount which he has so received, and for what he received it, and the source from which it came, this is evidence against him, and justifies the finding that what he says is true is true, and that he did receive the profit which he says he received.

This argument, so far as it goes, is unanswerable, and it went far enough to secure this verdict, and would go far enough to sustain it, were it not for the fact that the mind staggers over giving sanction to a finding that something is true which we know is not true.

There can be no question that the self-disserving declarations of a party are evidence against himself. They are, however, only evidence, and, if self-serving, would not be evidence which he could offer. As evidence, it may have much or little weight. Generally speaking, no one would be satisfied to make the finding that a man had made a profit merely because he said he had made a profit, even if he had a strong and sincere belief that he had made a profit. When, however, a man for his own purposes and to accomplish a certain object, which it is to his advantage to have accomplished, secures that advantage from the fact that he had actually made the profit which he said he had made, he cannot complain if afterwards, when the fact of profit is to his disadvantage, he is not permitted to successfully deny the fact which he before asserted.

This suggests one reason for making the statement before made that, if there is a fair jury question in the case, a new trial, in the opinion of the trial judge, should not be granted. It also suggests the disturbing element which exists in the case. It is that the question is not wholly or quite whether there was a profit, and because of this income, but whether the profit or income was the kind of income which is made taxable by law. The system of income taxes or excise taxes, where the amount paid is measured by income received, whatever else may be said of it, possesses these claims to merit: It distributes the money burden of government equably in consonance with the money benefits which flow from it, and it exacts payment in a way which makes the burden the least felt. No one is called upon to pay unless he has the wherewith with which to pay. If the law is construed with these grounds, indicating its policy, in mind, we must construe the words "income received" as meaning actually received, and not to include something which exists merely as a figment of the imagination.

With this construction given to the act of Congress, the common-sense conclusion is that the exacted tax is not payable. Such was the instruction given to the jury, but, inasmuch as the moneys, the receipt of which was sought to be taxed, had not been received, binding instructions to so find would seem to have been called for. This direction would have been given, except for the circumstance that the receipt of moneys is a fact of which there was evidence in the declarations of the taxpayer, and this may be the fact. The final result of the taxpayer having no money is without importance. The real question is whether he received any as income. The distinction may be thus illustrated. A man may buy a property on speculation, as it is termed. He may sell it in form and fact at a profit, and the transaction be an actual money transaction, and in fact everything it is in form. The man has made a profit. Afterwards, within the tax year, he may regret his bargain, thinking he could make more through another sale, and the purchaser may resell to him at the former price. The final result is that the man has no money out of which to pay the tax. It may nevertheless be said with plausibility, if not with actual truth, that he did make a profit.

It was upon this distinction that the case was submitted to the jury. Were there in fact two sales? The distinction, however, would seem

to be too fanciful to stand the test of common sense. The vice in it is that there was no more justification for the one finding than the other, and the invitation held out to the jury to find for the plaintiff was based upon error.

The case of Southern Pacific v. Lowe, 247 U. S. 330, 38 Sup. Ct. 540, 62 L. Ed. 1142, supplies us with a sufficient test of the application of the adjudged cases to the instant case. Counsel for defendant view this as decisive of the present case. Counsel for the United States read it as a case ruled upon its peculiar facts. This it undoubtedly was because the opinion so states. What, however, were its facts? There was a directed verdict against the taxpayer. The judgment was reversed, so we know this direction was wrong. A procedendo, however, was awarded, and the case remitted. We are not, therefore, at liberty from the mere reversal to infer that binding instructions should have been given in favor of the taxpayer.

So far counsel for the United States is right in differentiating the Lowe Case from the present case. The opinion of Mr. Justice Pitney, however, states certain findings which the court had made. Some of these were made because the facts were admitted, but some were made upon the deductions of the court. The test fact in the Lowe Case was whether the accumulations sought to be taxed as dividend income had accrued during the tax year or during a prior period when it was not taxable. There, as here, there were two corporations. One was the Central Pacific; the other the Southern Pacific. There, as here, each had a nominal independent existence as separate and distinct legal entities. Their relations were such, however, that in fact the Southern Pacific was everything and controlled everything, allowing the Central Pacific merely sufficient funds to maintain its organization nominally as a corporation. The control was exercised through a lease and through a board of directors. A set of books was kept by each company, and transactions were entered as if each company was independent and separate, except for the contractual relations between them. These bookkeeping facts indicated that the Central Company had accumulated a surplus. During the tax year this surplus was distributed in the form of a dividend, which took the further form of a payment to the Southern Pacific. In other words, if the bookkeeping facts had been the real facts, the tax would have been payable. What had actually been done was merely to make the bookkeeping entry which credited the account kept against the Central Company investment with the like sum received as a dividend. Nothing in fact had been received at the time the dividend was declared and entered as received.

The court reached the conclusions set forth in the opinion.

(1) The accumulations out of which the dividend had been declared had accumulated before the tax year. This was admitted to be the fact, and is stated to be an admitted fact.

(2) The conclusion of the court was that the fund had come to the Southern Pacific before the tax year, and that the declaration of the dividend worked nothing beyond the formal change from surplus to dividend.

(3) The opinion carefully notes the distinction between the ruling made and the case of the rights of the ordinary stockholder in and to a surplus fund before and after a dividend has been declared and made payable thereout. The case of such a stockholder is dealt with in the subsequently reported case of Lynch v. Hornby, 247 U. S. 339, 38 Sup. Ct. 543, 62 L. Ed. 1149.

(4) The general proposition is advanced that income which had in fact been received before the tax year did not become taxable because in mere form and appearance it was made to appear to have been received during the tax year.

(5) The decision made was based upon the facts that the two companies, although they had each a formal existence as separate entities were in actual fact one organization, and that the fund which in form and as a bookkeeping fact came to the Southern Pacific during the tax year had in actual fact been in its hands before the tax year, and although in form the fund belonged to it only as a dividend received during the year, the fact was the fund had belonged to it before the tax year.

(6) The bookkeeping facts are stated to be not controlling of the real facts.

(7) A surplus fund which is made up of accumulations is stated not to differ from accretions in value of assets.

It is doubtless true, as counsel for the United States contend, that the Lowe Case may be distinguished from the instant case. The distinction, however, is based upon differences which are more formal than substantial. If, in the present case, the jury had been directed to find the verdict which they did find, the Lowe Case would command us to grant a new trial. What the jury found was an ultimate fact in each case. In the Lowe Case, the evidentiary facts were admitted; here, although not formally admitted, they are not in controversy. The court there drew its own conclusion from the evidentiary facts. How can we refuse to draw a like conclusion? This would ordinarily impose the duty of making absolute the rule for a new trial. To make this disposition of the case would result in depriving the United States and its counsel of the fruits of a trial victory of which they should not lightly be deprived, and if the conclusion indicated is wrong would be an injustice to them.

[3] We have, therefore, after much hesitation, decided to pro forma refuse the motion for a new trial and enter judgment on the verdict. This will hold the fact situation as it is until the law of the case can be finally determined. This, it is true, is at the expense of referring the questions involved—the statement of which we leave to counsel—to the appellate tribunal, the decision of which, in the first instance, we would ordinarily not be justified in evading. The result of the trial, however, is such that whatever judgment is entered will to all practical intents and purposes be a final judgment.

The question of the allowance of interest, we understand, has been withdrawn, and has therefore not been discussed.

Rule for new trial discharged, and judgment is entered on the verdict in favor of the plaintiff.