25 F.(2d)—27½

TUCKER v. ALEXANDER, Collector of Internal Revenue.*

Circuit Court of Appeals, Eighth Circuit. March 27, 1928.

No. 7124.

1. Internal revenue 7(1)—Substance governs in construing and applying income tax laws.

Substance of transaction, and not form, must govern in construing and applying income tax laws; transaction being considered as whole.

2. Internal revenue 7(6)—Income tax, payable by stockholder on dissolution of corporation, after separation of assets, held determinable on basis of original valuation of assets remaining with corporation (Comp. St. §§ 6336⅛b[c], 6336⅛bb[a]).

Where mercantile corporation, in order to comply with state law, transferred real estate to newly created corporation after March 1, 1913, paying amount received as dividends to its stockholders, who were also proportionately stockholders in the new corporation and were thus reimbursed for their subscriptions, income tax payable by stockholder of mercantile corporation on its dissolution, determinable under Act Feb. 24, 1919, §§ 201(c), 202(a), Comp. St. §§ 6336⅛b(c), 6336⅛bb(a), by ascertaining gain derived on basis of value of property as of March 1, 1913, was properly determined by considering only the value of the assets of the corporation which remained with it.

3. Internal revenue 7(6)—Income tax on amounts received on liquidation of corporation held to apply to partial liquidation of assets, where corporation's former assets had been separated (Comp. St. §§ 6336⅛b[c], 6336⅛bb [a]).

Act Feb. 24, 1919, §§ 201(c), 202(a), Comp. St. §§ 6336⅛b(c), 6336⅛bb(a), fixing tax payable by stockholders on liquidation of corporation on basis of profit realized over value of property on March 1, 1913, held applicable in case of partial liquidation of assets held in 1913, where a separation of assets had taken place by creation of new corporation, and original corporation only was dissolved.

4. Internal revenue 7(6)—Transaction by which mercantile corporation transferred real estate to newly organized corporation, paying proceeds as dividend to stockholders to cover subscriptions to new corporation, constituted separation of assets, in determining income tax on liquidation; "current stock dividend" (Comp. St. §§ 6336⅛b[c], 6336⅛bb [a]).

Transaction by which mercantile corporation, in order to comply with state laws, sold real estate to newly organized real estate corporation, paying amount received in dividends to stockholders who had subscribed identical amounts as stockholders of new corporation, constituted merely separating of assets between two corporations, for purpose of determining stockholder's income tax on liquidation of original corporation, under Act Feb. 24, 1919, §§ 201 (c), 202(a), Comp. St. §§ 6336⅛b(c), 6336⅛bb (a), and dividend declared by the liquidated corporation did not constitute a current stock dividend.

*Rehearing denied June 12, 1928.

**5. Internal revenue ⊙⇒7(19)—Alleged loss of good will held not to require deduction from stockholder's income tax on liquidation of corporation, where business was continued as partnership (Comp. St. §§ 6336⅛b[c], 6336⅛bb[a]).**

Alleged loss of good will of corporation on liquidation *held* not considered, in determining income tax on amounts distributed to stockholders under Act Feb. 24, 1919, §§ 201(c), 202(a), Comp. St. §§ 6336⅛b(c), 6336⅛bb(a), where stockholders, after liquidation, continued same business under the same name at the same location as a partnership; good will not entering into stipulated values of the property for purpose of determining tax, since values are based solely on physical assets.

**6. Internal revenue ⊙⇒38(14)—Stockholder in suit to recover income taxes held entitled to recover unpaid tax refund previously allowed (Comp. St. §§ 6336⅛b[c], 6336⅛bb[a]).**

In action by a stockholder of corporation to recover income tax paid under protest on liquidation of corporation under Act Feb. 24, 1919, §§ 201(c), 202(a), Comp. St. §§ 6336⅛b(c), 6336⅛bb(a), taxpayer was entitled to recover tax refund, which had been allowed, but had not yet been paid.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by W. C. Tucker against Acel C. Alexander, Collector of Internal Revenue. Judgment for defendant, and plaintiff brings error. Reversed, with instructions.

Charles H. Garnett, of Oklahoma City, Okl., for plaintiff in error.

T. H. Lewis, Jr., Sp. Atty. for Bureau of Internal Revenue, of Washington, D. C. (Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl., and C. M. Charest, Gen. Counsel for Bureau of Internal Revenue, of Washington, D. C., on the brief), for defendant in error.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and KENNEDY, District Judge.

STONE, Circuit Judge. The Osage Mercantile Company was an Oklahoma corporation organized in 1902 and having, on March 1, 1913, a capital stock of 300 shares of the par value of $100 each. July 20, 1920, this corporation was dissolved and its affairs liquidated by division in kind of its property to its then stockholders who, as a partnership, continued the same business at the same place and under the same name.

Prior to March 1, 1913, and up until the dissolution of the corporation, Tucker owned 150 shares of the capital stock. He made a personal income tax return for 1920 and paid in accordance therewith. Shortly afterwards, he was reported for an additional tax for the above year amounting to $8,610.84. This additional tax was paid under protest and a claim for refund thereof promptly filed. This claim was allowed for $216.26 and otherwise rejected. This action was filed by him to recover the entire amount of the above protested payment. At the trial, he admitted an error of $1,968.71 in his original return, hence the amount apparently in dispute is the difference ($6,642.13) with interest. However, at the time the tax was calculated, the fact that cash dividends of $5,796.53 (distributed between March 1, 1913, and May 14, 1913) were out of surplus on hand on March 1, 1913, was overlooked and defendant concedes that the tax thereon was erroneous and there should be refund thereof. Therefore, the amount involved is $6,642.13 as affected by this refund. The trial court entered judgment in favor of defendant and for costs "without prejudice to the plaintiff's right to demand and receive the refund of tax in the sum of $216.26 already allowed him by the Commissioner of Internal Revenue." From that judgment, Tucker sued this writ of error. This court affirmed the judgment on grounds not based upon the merits [15 F.(2d) 356]. The Supreme Court (on certiorari) reversed such determination of this court for the reason that the matters upon which this court had based its decision had been waived and, therefore, were not properly before this court (48 S. Ct. 45, 72 L. Ed. ——, decided Nov. 21, 1927) and remanded the case to this court where it has been again argued and submitted.

The entire disputed tax is based upon profits claimed to have been received by Tucker from the liquidation, in 1920, of the above corporation. The tax is levied under portions of sections 201 (c) and 202 (a) reading as follows:

"Amounts distributed in the liquidation of a corporation shall be treated as payments in exchange for stock or shares, and any gain or profit realized thereby shall be taxed to the distributee as other gains or profits." Act Feb. 24, 1919, 40 Stat. 1057, 1059, § 201 (c), Comp. St. § 6336⅛b [c].

"That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

"(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date." 40 Stat. 1060, § 202 (a), Comp. St. § 6336⅛bb (a).

As Tucker held this stock continuously from prior to March 1, 1913, until the liqui-

dation of the corporation in 1920, he makes no contention that he is not liable for any gain in its value at the liquidation over its value on March 1, 1913. He contends there was no such gain. The parties stipulated that, based upon the net worth of the corporation property, the stock was worth, per share, $356.86 on March 1, 1913, and $319.42 at the date of liquidation in 1920. For reasons hereinafter set forth, the taxing officials decreased the value ($356.86) on March 1, 1913, by $153.15 per share, leaving a net value, as of that date, of $203.71. Thus computing the value as of March 1, 1913, there resulted a gain, at the liquidating date in 1920, of $115.71 on each of the 150 shares held by Tucker. The entire controversy here is over the propriety of this deduction made by the taxing officials from the value as of March 1, 1913. There is no dispute as to the facts involved in the item deducted. The dispute is as to the legal effect of those facts.

Those facts are as follows: Long prior to 1913, the Osage Company had bought several town lots for $50,150, placing thereon a purchase price mortgage of $10,000. This real estate was consistently carried upon the books at the above figure although it had much increased in value since the purchase. Early in 1913, question arose, because of provisions in the laws of Oklahoma, as to the right and power of the Osage Company to hold this real estate. Solely to meet this situation and to comply with the requirements of the Oklahoma law, as they understood it, the shareholders of the Osage Company organized an Oklahoma corporation to take over and hold this real estate. That corporation, the Mercantile Real Estate Company, had a capital stock of $15,000 and its shares were subscribed by the shareholders of the Osage in the same proportions as they held stock therein. This real estate was, about May 13, 1913, transferred from the Osage to the Real Estate Company for a consideration of $15,000 and is yet held by it. At the same time, a dividend of $18,000 was declared and paid by the Osage—$3,000 represented the usual periodical dividend and $15,000 the amount paid for this real estate by the Real Estate Company. There is some confusion as to the exact method of paying for the shares in the Real Estate Company and in this transfer. Of the three shareholders who testified, one said that dividend checks were issued to the stockholders of the Osage for a total of $15,000; that these checks were turned into the Real Estate Company in payment of the stock subscriptions to that company and were then returned by that company to the Osage in payment for the real estate. Another stated the stock in the Real Estate Company came as a dividend from the Osage. The third stated the real estate was transferred to the Real Estate Company and its stock issued to the subscribers therefor. Apparently, the Real Estate Company assumed the mortgage indebtedness of $10,000 on this real estate. The books of the Osage Company handled this transaction by showing the value of the real estate as $50,150; crediting the real estate account with $50,150; charging notes payable with $10,000 (the mortgage indebtedness); and charging undivided profits with $25,150 (the difference between the value, $50,150 and the $15,000 received from and the $10,000 indebtedness assumed by the Real Estate Company). But whatever route was traveled to reach the end and whatever book entries were made to record the transaction, the purpose and the effect of that transaction are clear. The purpose was to remove the real estate from the assets of the Osage in order to comply with the Oklahoma law. The effect was to completely sever such property from any ownership by the Osage and to vest title in a new corporation, organized for the purpose by the stockholders of the Osage with the same proportional stock holdings as they had in the Osage and this was accomplished without the outlay of a single dollar originally contributed by such stockholders to the new company. In short, the result was that the Osage no longer had the real estate; that the Real Estate Company had the real estate and that the stockholders held their proportional interests, as such, in the same property, now held by two instead of by one corporation. This seems, at one time, to have been the view taken by Tucker because he signed (for the Osage Company) a letter to the department requesting consolidation of income and capital of the two companies for excess profits purposes, in which he said:

"In figuring Corporation Excess Profits we submit that the capital invested in the Mercantile Real Estate Co. should be added to the invested capital of the Osage Mercantile Co. for the reason that the two corporations are, in fact, a continuation of the one business established in 1902, the real estate being taken out of the mercantile business in 1913 to facilitate handling both branches of the business in accordance with Oklahoma law."

The court (on mutual motions for judgment) found:

"That shortly prior to May 13, 1913, a new corporation, known as the Mercantile

Real Estate Company, with a capital stock of $15,000, was formed by the stockholders of the Osage Mercantile Company; that the stockholders of the Osage Mercantile Company thereupon subscribed for all the stock of the new corporation and in the same proportion as their stockholders in the old corporation, that said stockholders then issued their personal checks totaling $15,000 to the new corporation in payment for its capital stock; that the new corporation thereupon paid this $15,000 to the old corporation in exchange for a conveyance under date of May 13, 1913, of all of its real estate, which said real estate had a book or asset value of $40,150; that the old corporation thereupon declared a dividend of the same $15,000 back to its stockholders; that the old corporation, the Osage Mercantile Company, continued its mercantile business proper until its dissolution on July 20, 1920."

It is the reduction of assets of the Osage by the above transaction which was regarded by the taxing officials as justifying a modification or reduction of the "basis" value of its assets as of March 1, 1913, with consequent result of increasing the profits at liquidation in 1920 by a corresponding sum which was, of course, reflected in the valuation of the shares of the stockholders therein.

The positions of the two parties are as follows: Defendant contends that the above transaction was a mere separation of assets and that only those assets remaining with the Osage were liquidated in 1920—therefore, only such character of assets should be considered in determining the statutory "basis" value. Tucker contends that the transaction concerning the real estate was the payment of a dividend, either of the real estate or of the stock in the new corporation; but that if the position of the defendant is correct as to the character of this transaction, yet there can be no partial liquidation under the statute but such must await liquidation of the Real Estate Company as representing the balance of the assets held March 1, 1913, by the Osage Company.

[1, 2] Substance and not form must govern in construing and applying income tax laws. United States v. Phellis, 257 U. S. 156, 168, 42 S. Ct. 63, 66 L. Ed. 180. The transaction must be viewed as a whole because it was a unit. Each step therein was necessary to its completion. There was no dividend of either real estate or of stock in the new company—none was declared of the stock and none was declared or intended of the real estate. The purpose of the transaction was not to distribute to the stockholders the real estate which was a portion of the property of the Osage Company. No change would have been thought of except that the stockholders of the Osage conceived that it was required by the Oklahoma law. They intended to make only such change as was so required. Their interests, as stockholders, in the existing assets of the Osage were not to be altered—they were to be carefully preserved. The real estate passed from the Osage to the new company without profit or loss to any stockholders. The $15,000 pursued its circular course without profit or loss to any stockholder. It was, in effect, a mere splitting of the existing assets and business of the Osage into two branches without affecting the interests of any stockholder. This action and this tax has to do only with a stockholder who was such prior to this transaction and who remained such in both companies up to the time of liquidation of the Osage in 1920. We think the defendant is correct as to the character of this transaction and that the liquidation of the Osage should be regarded as a partial liquidation of the assets constituting the statutory "basis."

[3] We see no reason why there cannot, under the statute, be such partial liquidation. There are no practical difficulties in thus determining the statutory "basis." There are no statutory inhibitions against a partial liquidation—even if there had been no separation of assets as here took place. The statute seems to attach the tax liability as of the time of liquidation. There is no claim of any off-setting loss on the part of the Real Estate Company as to the value of the real estate conveyed to it by the Osage. There is a clear and conceded profit, at liquidation, as to the business of the Osage, if the transferred real estate be entirely eliminated from calculation as, we think, it should be. On the other hand, to regard the statute as requiring complete liquidation of all assets held March 1, 1913, and not disposed of before or distributed at the time the corporation liquidated and went out of business would lead to postponement, defeat and possible fraud. This is not a case where a corporation has made partial distribution of its assets and, retaining the balance, continues to exist. But here the case is of two separate corporate entities. One distributes and dissolves. The other continues in business and may dispose of this particular real estate; acquire other property; broaden or restrict its operations; change stockholders; change capitalization. In these and in other ways, conditions, persons, property and legal rights may be changed and complicated, always to the delay and probably to the defeat of the tax

which under ordinary dissolutions and distributions would be due. This is true because, by the simple device of retaining an inconsequential amount of assets and continuing indefinitely to exist and hold such minimum, the tax could be suspended although the stockholders had received practically all of the assets at a large profit over value as of March 1, 1913. Also, from whom would the tax be collected and on what basis or theory assessed if after the main distribution, the stockholders should, in part or entirely, change? The language of the statute is broad enough to cover this situation and we think it should be construed to prevent the complications, practical difficulties, evasions and frauds which would otherwise occur.

[4] Tucker relies upon several cases in the Supreme Court as establishing that the transaction in 1913 was "a current as opposed to a liquidating dividend and was taxable as income in that year." The first of these is Lynch v. Turrish, 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087. There a corporation, in 1913, sold all of its assets to another company (which assumed all debts) and thereafter distributed, as a dividend, this cash price. The tax was laid upon the increase in value of shares bought before 1913 but where the increase had accrued before March 1, 1913. The points decided were that such increase was not taxable income (under act of 1913) but was increase in capital and that such increase in capital having accrued prior to March 1, 1913, was not taxable under the act of 1913 (38 Stat. 166). Another case is Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149, which determined that ordinary corporate dividends were taxable as income of the stockholder under the act of 1913, even though paid from surplus accumulated prior to March 1, 1913. Another case is Peabody v. Eisner, 247 U. S. 347, 38 S. Ct. 546, 62 L. Ed. 1152, which decided that a dividend to shareholders of the Union Pacific made up of cash and Baltimore & Ohio stock was not restricted as income, for taxation, by the fact that the entire net income of the Union Pacific for the year involved was less than the value of the cash and stock distributed. The court therein says (pages 349, 350 [38 S. Ct. 547]) that the dividend of the Baltimore & Ohio stock "was not a stock dividend but a distribution *in specie* of a portion of the assets of the Union Pacific, and is to be governed for all present purposes by the same rule applicable to the distribution of a like value of money. It is controlled by Lynch v. Hornby, this day decided [247 U. S.] 339 [38 S. Ct. 543, 62 L. Ed. 1149]." None of the three above cases have any simi-

larity to the facts involved here and are not applicable.

Also United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180, and Rockefeller v. United States, 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186, are cited as to the same point and those two cases and Marr v. United States, 268 U. S. 536,[1] are relied upon as showing that the 1913 transaction was a stock dividend. None of these three cases are applicable because all of them were stock dividend cases while here the facts and the finding of the trial court (on mutual motions for judgment) settle that there was no dividend of stock in 1913 but what took place was a splitting of assets between two corporations for the sole purpose of meeting statutory requirements as to a business corporation holding real estate and the business proceeded thereafter just as it had before.

### Good Will.

[5] Another contention is as to good will. Tucker contends that, through this liquidation, all good will of the Osage was lost and that such loss should be taken into account. Good will does not enter into the stipulated values of the property which values were based solely on physical assets. We think this contention is not well founded. If good will is the character of property which the statute contemplates shall be included in these tax estimates, it was not lost here as the stockholders (at liquidation) have, since liquidation, continued the same business under the same name at the same location, as a partnership. No witness testified to any such loss and one witness for Tucker said he thought there would be no loss through the change to a partnership. A majority of the witnesses for Tucker testified there had been no appreciable change in good will value as of March 1, 1913, and the date of liquidation in 1920, while Tucker and one other witness thought some loss in value but made no estimate thereof. The court found no loss.

### Tax Refund Allowed.

[6] This tax was paid October 30, 1923. Three days later the claim for refund was filed. It was not acted upon until April 24, 1925. On that date it was allowed as to $216.26. This allowance has not been paid. The trial court denied recovery therefor on the theory that such allowance had been made and would be paid. We think recovery should be given for this sum with interest from date of payment by Tucker.

### Conclusion.

Judgment reversed with instructions to enter judgment for plaintiff for $216.26

[1] 45 S. Ct. 575, 69 L. Ed. 1079.

(with interest from October 30, 1923), and the tax erroneously collected upon the cash dividend of $5,796.53 with interest thereon from date of payment) and for costs.