CARBERY (THOMPSON v.). See Cases Nos. 13,945 and 13,946.

CARBERY (UNITED STATES v.). See Case No. 14,720.

CARBON STOVE CO. (THATCHER HEATING CO. v.). See Case No. 13,864.

CARD (DODGE v.). See Case No. 3,951.

## Case No. 2,395.

### CARDINEL et al. v. SMITH et al.

[Deady, 197.] [1]

Circuit Court, D. California. March 14, 1867.

REVENUE ACT OF 1866—GOODS IN HANDS OF MANUFACTURER—FORFEITURE—REMEDIES OF CLAIMANT—CONSTRUCTION OF STATUTE.

1. Section 63 of the act of July 13, 1866 (14 Stat. 169), which provides that a person claiming goods which have been seized as forfeited under the internal revenue act, must give bond to the collector for costs and expenses, etc., is not compulsory, and does not prevent the owner of goods which he alleges to have been seized unlawfully, for maintaining an action against the seizing officer for the damages occasioned by the trespass.

2. By section 70 of the act of July 13, 1866 (14 Stat. 173), it is in effect provided that canned goods in the hands of the manufacturer, on and after August 1, 1866, shall pay a duty; and by the same act (Id. 144), it is declared that a retail or other dealer in such goods, for all the purposes of taxation, "shall be deemed the manufacturer thereof;" while in Schedule C (Id. 145) it is provided that such goods when "made, prepared, and sold or offered for sale or removal for consumption in the United States, on or after October 1, 1866," shall be liable to a stamp duty. *Held*, that a retail or other dealer who offered such goods for sale after August 1, 1866, was to be deemed and held the manufacturer thereof, and that such goods were liable to pay a duty, and if offered for sale without the payment thereof, were forfeited to the United States.

[See note at end of case.]

3. Where the intention of the legislature is in some particular ambiguously expressed, it is the duty of the court so to construe its act so as to make it harmonize in such particular with the general purpose, plainly expressed.

4. When an act (14 Stat. 144) declares that dealers in canned goods, under certain circumstances, "shall be deemed the manufacturers thereof," it is equivalent to declaring that such dealers shall be treated and held liable as if they were manufacturers, notwithstanding they are not such in fact.

This action was tried by the court, without the intervention of a jury. It was brought [by Adolph Cardinel and Augustine Lusulsky] against the defendants [W. C. S. Smith and Jerome B. Walden] for taking and carrying away certain canned meats, fruits, etc., alleged to be the goods of the plaintiffs, in the district court of the state for the seventh judicial district, and by the defendants removed to the United States circuit court, under section 67 of the act of July 13, 1866 (14 Stat. 171). The facts of the case are sufficiently stated in the opinion of the court.

W. W. Pendegast, for plaintiffs.
R. F. Morrison, for defendants.

DEADY, District Judge. In making the seizure and sale complained of, the defendants acted in their official capacity—Smith as collector of internal revenue for the fifth district of California, and Walden as constable of Napa township—and upon the assump-

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

tion and claim on their parts, that the goods seized were liable to pay a duty as provided in Schedule C of the act aforesaid, and were forfeited to the United States on account of having been exposed to sale by plaintiffs without the duty thereon having been paid by affixing the proper stamps thereon. It is insisted on behalf of the defendants that this action cannot be maintained, even if the seizure was wrongful, because the plaintiffs, it is said, are confined to the remedy provided or allowed by section 63 of the act of July 13, 1866 (14 Stat. 169). This section allows any person, who may claim goods that have been seized as forfeited to the United States, under the internal revenue act to file a bond with the collector for costs and expenses, and thereupon the collector must give notice of his proceedings to the district attorney, who must proceed to have the alleged forfeiture adjudicated in the proper court. But this provision is neither compulsory nor exclusive, and does not prevent the claimant from adopting and pursuing any other existing remedy. Indeed, section 63 aforesaid, is primarily intended to govern the conduct of the collector in the disposition of goods seized as forfeited to the United States, and in no way affects his liability to an action by the party aggrieved in case of an unlawful seizure. At common law any officer, including a sheriff acting under process, who seized goods of another by mistake or otherwise without sufficient authority, was liable to an action of trespass therefor. True, congress, for the purpose of preventing officers of the customs from being harassed by actions for vindictive damages, has provided that where the property seized, has been adjudged to the claimant as not liable to seizure, if the court certifies that there was probable cause for the arrest, no action can be maintained therefor. The claimant is restored to his property by the judgment of the court, but the fact, judicially ascertained, that there was probable cause for the taking and detention, is made a bar to an action for damages for the mere detention of the property. But in regard to these goods, there has been no proceeding in rem to determine their liability to seizure as forfeited to the United States. The plaintiffs' goods have been taken from them by the defendants, and the former, instead of claiming them, giving surety for costs, and thereby taking the case into court upon the naked question of forfeiture, have seen proper to abandon the goods and sue the defendants in trespass for the value thereof. Unless, then, the taking or seizure was lawful, the defendants must respond in damages to the extent of the value of the goods, and look to the government, which has had the benefit of the seizure, to reimburse them. Assuming that the seizure was unlawful as alleged, the plaintiffs have not mistaken their remedy, and may maintain this action.

The only remaining question in the case is, were these goods, at the time they were offered and exposed for sale, liable to pay a duty? If they were, they were forfeited to the United States and the seizure was lawful, otherwise not. Schedule C, as amended by section 9 of the act of July 13, 1866 (14 Stat. 145), declares, that such goods as these when "made, prepared and sold or offered for sale, or removed for consumption in the United States, on and after the first day of October, 1866," shall be liable to a stamp duty. The plaintiffs purchased these goods before October 1, 1866, and afterwards offered them for sale. The seizure was made on October 22. This being so, of course they were "made and prepared" before October 1. It is insisted by the plaintiffs that this provision of the act should be read so as to declare that these goods, whether sold or offered for sale, or removed for consumption, etc., after October 1, should also be made and prepared—manufactured after that date. I think this proposition reasonable and grammatical, and so far as this clause of the statute is concerned, settles the question in favor of the plaintiffs. The alternative is only applied to the selling, offering for sale or removing for consumption after October 1, but in either case the goods so sold, offered or removed, to be liable to the duty, must have been "made and prepared" after said date. But this is not all. Said section 9 also provides (14 Stat. 144): "That any person who shall offer or expose for sale any of the articles named in Schedule C, * * * shall be deemed the manufacturer thereof, and subject to all the duties, liabilities, and penalties imposed by law in regard to the sale of domestic articles without the use of the proper stamp or stamps denoting the tax paid thereon." If, when the plaintiffs exposed these goods for sale on October 22, 1866, they were in contemplation of law the manufacturers of them, it was their duty to first affix "thereon the proper stamp," in default of which the goods were forfeited to the United States and liable to seizure. 13 Stat. 296, 482.

By section 70 of the act of 1866 (14 Stat. 173) it is provided that "whenever by the terms of this act a duty is imposed upon any articles, goods, wares or merchandise, manufactured or produced, upon which no duty was imposed by either of said former acts, it shall apply to such as were manufactured or produced, and not removed from the place of manufacture or production on the day when this act takes effect." The same section declares, "that this act shall take effect when not otherwise provided on August 1, 1866." The goods in question fall within this category, as no duty was imposed upon such goods "by either of said former acts." These are the only provisions of the internal revenue acts that bear upon the question.

Taking this legislation together, what was

the intention of congress as to taxing these goods? That intention when ascertained it is the duty of the court to give effect to, without regard to any other consideration. For the plaintiff it is contended that congress did not intend to impose a duty upon canned goods made or prepared before October 1, 1866. So far as the language of Schedule C is concerned, it supports the argument. But it is evident from the provision just quoted from section 70, that such was not the intention of congress in regard to all such goods as had not been "removed from the place of manufacture or production" before August 1, 1866; for this section expressly provides that the duties specified in Schedule C should be imposed upon such goods. And if the intent of this provision was uncertain or open to argument, every consideration of just public policy in the imposition of taxes would conduce to this conclusion. To tax canned goods after October 1, and exclude from the operation of the law, all such as were manufactured before that date, would, to that extent, be an unjust discrimination in favor of the owners of the latter class of goods. Congress having thus provided for the taxation of canned goods "not removed from the place of manufacture or production" before August 1, 1866, from this fact, the inference is reasonable that it also intended to tax those which, although removed, had not yet passed into the hands of the consumer. No reason is given, why canned goods in the hands of the manufacturer when the act of 1866 took effect, should be liable to pay a duty, while the same class of goods in the hands of the jobber or retailer, should be exempt. At the same time it is admitted, that if congress has not provided for taxing such goods in the hands of the merchant, as well as the manufacturer, whatever may appear to have been the general purpose of its enactment, the court cannot supply the omission. But if the intention of the legislature in this particular be doubtful, or ambiguously expressed, it is the duty of the court to construe the act, if possible, so as to make it harmonize in such particular, with the general purpose, plainly expressed.

Taking the whole legislation together, I do not think that congress intended to exempt the goods of the plaintiffs from taxation, because they were "made and prepared" before October 1—if exposed for sale after that time. If the question turned upon the language of the provision in Schedule C only, the conclusion might be otherwise. But the law of the case is not found in this provision alone. In fact, these schedules are mere brief indexes of subjects, the general legislation concerning which, is found elsewhere in the body of the acts. The clause of section 9 (14 Stat. 144) above quoted, in my judgment, settles the law of this case against the plaintiffs. Their counsel, apparently conscious that the letter of this section was against them, sought to modify its effect, by endeavoring to show that when it declares that "a person who shall offer or expose for sale, any of the articles named in Schedule C, * * * shall be deemed the manufacturer thereof," it only creates a disputable presumption that such person is "the manufacturer thereof," which, in this case, is overcome by the admitted fact, that the plaintiffs are not the manufacturers, but only the vendors of the articles. The word "deemed" in this connection means "judged," "determined;" and when it is enacted that the vendor of an article shall for any purpose, "be deemed the manufacturer thereof," for such purpose, he is to be absolutely considered such manufacturer. Indeed, it would be of little use for congress to declare that a vendor of canned goods, for the purpose of internal revenue, should be deemed a manufacturer thereof, if such declaration could be overcome and held for naught, by showing that, in fact, he was not such manufacturer. Now, by such declaration, congress does not undertake to destroy the distinction, in fact, between the two persons or occupations, but only that the law applicable to the manufacturer of canned goods, shall also be applicable to the vendor thereof—that in this respect, and for this purpose, they shall be treated alike.

The internal revenue act [14 Stat. 98] is a piece of patch work, and it is sometimes difficult to reconcile its various provisions with each other. Its great length, and the multiplicity of subjects which it embraces, enhances the labor of understanding it. I confess I do not feel the utmost confidence in the present construction and application of it, though I feel well satisfied that it is just and equal in its consequences. As has already been observed, if a tax like this is only imposed upon articles manufactured after it takes effect, it operates as an unjust discrimination against the future manufacturer. And I am free to admit that this consideration has had its influence upon my mind in reaching the conclusion that congress did not intend to tax canned goods in the hands of the manufacturer when the act took effect, and exempt the goods in the hands of the seller, because manufactured before that date.

It appears that the commissioner of internal revenue has decided this question both ways. By a circular from the "Office of Internal Revenue," dated October 3, 1866, it was declared, that "all canned goods, either in the hands of the manufacturer or purchaser, sold or offered for sale on and after the first instant, are required to be stamped as specified in Schedule C of the act of July 13, 1866." By a second circular on the subject, from the same office, dated October 27, 1866, it was declared: "While it is believed that it was the purpose and intent of congress to impose a stamp tax upon the above named articles (canned goods) if sold, or of-

fered for sale, or removed for consumption in the United States, on or after October 1, 1866, regardless of the time of their manufacture or production, that intent is so imperfectly expressed as to render it doubtful whether under a proper construction of the language of the statute such a tax can be collected." It is probable that by the time the second circular reached the revenue offices, nine tenths of the goods in question, such as had passed out of the hands of the manufacturer or producer before October 1, 1866, had paid the duty. It is also to be observed, that the decision of the commissioner appears to have been based upon the language of Schedule C alone, without reference to the other sections of the act above cited. Again, the commissioner, as a matter of public policy, might instruct his subordinates to refrain from enforcing this provision of the act according to this construction, for the reason that it was involved in some doubt, and might lead to unprofitable litigation. In some such light, I read the decision in the second circular. A department ruling made under such circumstances and from such motives, well enough in itself, can have but little weight in a court called upon to determine what the law actually was, as appeared by the acts of the legislature, at the time of this seizure.

There must be judgment for the defendants in bar of the action, and for their costs and disbursements.

[NOTE. As to who is to be deemed a manufacturer within the meaning of the act of 1866, see U. S. v. Weedon, 3 Fed. 623; Hendy v. Soule, Case No. 6,359; In re Whipple File Co., Id. 17,522; U. S. v. Houghton, Id. 15,396.]