CHESTER N. WEAVER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOUISE MYSELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HART L. WEAVER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

A. R DENNIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM J. RICHARDSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JAMES GURLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20006, 20007, 20008, 20011, 20012, 20051.
Promulgated January 21, 1931.

*Philip G. Sheehy, Esq.*, for the petitioners.
*R. W. Wilson, Esq.*, for the respondent.

OPINION.

PHILLIPS: It is the contention of petitioners that they contributed $100,000 to the capital of the Weaver Co., that this contribution of capital was returned, that they received nothing more than they contributed, and that therefore there is nothing on which they may be taxed. They cite the definition of income made by the Supreme Court in *Eisner v. Macomber*, 252 U. S. 189, and it may be admitted fo rthe purposes of this decision that if, as a matter of law, what the petitioners received was a return of their investment, there was no income.

Section 201 of the Revenue Act of 1921 provides, so far as pertinent, as follows:

(a) The term "dividend" when used in this title * * * means any distribution made by a corporation to its stockholders or members whether in cash or in other property out of its earnings or profits accumulated since February 28, 1913 * * *

(b) For the purpose of this Act, every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax after the earnings and profits accumulated since February 28, 1913, have been distributed. * * *

The section then proceeds to set out the effect of tax-free distributions upon the computation of gain or loss from the subsequent sale of the stock. In *Douglas v. Edwards*, 298 Fed. 229, the court was called upon to pass upon the meaning of the word "deemed" as used in a provision of the Revenue Act of 1917 similar to that we are now considering. There the court said:

If it had been intended that this word should mean a rebuttable and not a conclusive presumption, the word "presumed" could readily have been used, and that is a word which is very familiar in many statutes. "Deemed," and its synonym, "regarded," according to definitions in cases and dictionaries, is the equivalent of "considered" or "adjudged." *Leonard v. Grant* (C. C.) 5 Fed. 11, 16; *U. S. v. Doherty* (D. C.) 27 Fed. 730, 734; *Michel v. Nunn*, (C. C.) 101 Fed. 423; *Cardinel v. Smith*, 5 Fed. Cas. 45, 47; *Walton v. Cavin*, 16 Q. B. 48, 81.

We think it was the purpose of the statute that any distribution made to shareholders should be conclusively presumed to have been made from the most recently accumulated undivided profits or surplus, and that it was intended that the corporation should not be permitted. to determine to what year or period or to what fund it would allocate such distribution. Any other construction might well have led to confusion and inequalities.

That case went to the Supreme Court and was reversed upon another ground. Neither party questioned this portion of the Circuit Court's decision.

In *Hellmich* v. *Hellman*, 276 U. S. 233, the court, commenting upon a similar provision in the Revenue Act of 1918, said:

It is true that if section 201(a) stood alone in its broad definition of the term "dividend" would apparently include distributions made to stockholders in the liquidation of a corporation—although this term, as generally understood and used, refers to the recurrent return upon stock paid to stockholders by a going corporation in the ordinary course of business, which does not reduce their stock holdings and leaves them in a position to enjoy future returns upon the same stock. See *Lynch* v. *Hornby*, 247 U. S. 339, 344-346, 38 S. Ct. 543, 62 L. Ed. 1149, and *Langstaff* v. *Lucas* (D. C.) 9 F. (2d.) 691, 694.

In the 1918 Act there was express provision made for the treatment to be accorded liquidating dividends and it was held that this provision took all such dividends from the operation of section 201(a) of the Act. This provision respecting liquidating dividends was omitted from the 1921 Act, which renders the comment of the court in the *Hellmich* case entirely in point.

We are of the opinion that regardless of the effort of the corporation to make this distribution out of paid-in or "contributed" surplus, the statute required that the distribution be treated as paid out of the most recently accumulated earnings or profits to the extent of such earnings or profits accumulated since February 28, 1913. Since the corporation was organized in 1914 and had earned surplus of $225,000, the entire amount distributed was taxable as a dividend. *McCaughn* v. *McCahan*, 39 Fed. (2d) 3; See *Frank D. Darrow*, 8 B. T. A. 276; *Philetus W. Gates*, 9 B. T. A. 1133; *Eric A. Pearson*, 16 B. T. A. 1405; *Hamilton Woolen Co.*, 21 B. T. A. 334.

It may be pointed out that the contention of the petitioners, if sound, would permit a corporation, by retaining its earnings and redeeming its capital stock in an amount equal to its earnings, to make distributions to its stockholders which would escape tax. This was the very thing at which the statute was aimed.

There is nothing unconstitutional in such a statute. It imposes no tax upon the repayment of a capital investment; it simply provides that for tax purposes earnings upon the capital must be distributed before the capital can be returned. After such earnings are distributed, but not until then, the capital investment may be recovered without liability to taxation.

No argument is advanced that the amounts distributed to the stockholders were repayments of loans nor could such argument be validly urged. It is evident that in 1919, for some reason which does not appear, it was found advisable to reduce the amounts due to the stockholders upon their individual accounts and to increase the capital of the corporation by a like amount. The brief of counsel for the petitioners assigns as reason a temporary need of more working capital. This seems reasonable, but whatever the reason it is clear that if the transaction was a loan, no reason existed for disturbing the accounts with the stockholders. The corporation already had the use of these funds, but as a debtor. It was because the capital was to be increased and the debts decreased that the stockholders changed their position with respect to this $100,000 from creditors to investors. After this had been done their position was the same as that of any stockholder. The amount invested could be returned only by way of a distribution of property to stockholders; not by way of a payment of corporate indebtedness, for the relationship of debtor and creditor had ceased to exist.

There was, it is stipulated, a verbal understanding among the stockholders that at some future, apparently indefinite and undetermined, date the contributed sum would be returned to them. In the circumstances of the case this amounted to no more than an understanding that at a future date the stockholders would take steps to secure a distribution of corporate assets equal to the amount then contributed. The understanding between the stockholders was clearly insufficient to create a debt and could not serve to alter the legal effect of such a distribution of the corporate assets.

The facts stipulated negative any thought that the agreement was that there should be a delay in the payment of an indebtedness of the corporation to its stockholders, existing or to be incurred, as in *Southport Mill, Ltd.*, 6 B. T. A. 1073, and *William H. Davidow Sons Co.*, 1 B. T. A. 1215. The stipulation requires that the amount paid in to the corporation to increase its working capital be treated as a part of the stockholders' investment. This appears to be conceded, the petitioners not contending that the indebtedness to the stockholders continued after their accounts were charged with the additions to capital, but taking the position that no distribution of earnings takes place when amounts originally contributed to the capital of a corporation are returned to the stockholders.

We regard it as immaterial that no additional stock was issued. While for some corporate purposes there is a distinction between amounts paid in for capital stock and amounts paid in as surplus, both are amounts which are placed at risk in the business which, for the purpose of computing tax under the law governing this case, may

not be deemed to have been returned until profits accrued subsequent to February 28, 1913, have been distributed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

STERNHAGEN, concurring: I think this case is much simpler than petitioners in their argument and the majority of the Board regard it. It is stipulated that " the greater part [the amount is not stated] of said 'contributed surplus' was paid in by the stockholders from various sums credited to the stockholders' individual accounts on the corporate books from former years' earnings and profits of the corporation." So in reality this greater part was not paid in by the stockholders at all. It had never left the corporation after being derived as former years' earnings and profits. The credit to the stockholders is meaningless except as a dividend, and yet there is no suggestion that such an earlier dividend was declared and taxed; and likewise the " contributed surplus " is an empty phrase. As to this " greater part," the stockholders had not had it and had not contributed it; and what they never had could not be returned to them. All I can see is that in 1922 they received for the first time a distribution of earnings and profits accumulated since February 28, 1913. There is, therefore, no occasion to consider whether, if it were a capital distribution, it would nevertheless be taxable as a dividend under section 201 (a). Although I do not now dispute the conclusion of the prevailing opinion on that question, I think it is not raised by the stipulated facts and, like other moot questions, should not be considered until facts arise which are governed by it.

The cases of *Southport Mill, Ltd.*, 6 B. T. A. 1073, affirmed in 26 Fed. (2d) 17; and *William H. Davidow Sons Co.*, 1 B. T. A. 1215, are beside the point. They postulate a dividend declared, and, hence, a debt, left in the business, and hold as to the corporation that such amounts are borrowed capital and excluded from statutory invested capital in computing excess-profits tax. In the present record there was no dividend declared and, hence, no debt, so that we must assume that while the profits tax was in force the Commissioner acted correctly and included the amounts in the corporation's invested capital. But whether they were or not is a collateral question which can not affect the disposition of the present issue on the evidence.

---

VAN FOSSAN, dissenting: The question presented by these cases is whether the repayment to the several stockholders of the amounts previously contributed by them to the corporation, chiefly by transfer of accumulated credits, and carried on the corporate books as " contributed surplus " constituted a payment of dividends.

The prevailing opinion concedes that if what the petitioners receive was a return of an investment, there was no income. This is the theory on which the petitioners tried their cases. The stipulated facts lead me to the conclusion that the return of the contributed amounts was either such a return of an investment or the repayment of a loan, neither of which is taxable.

I can not agree with the statement made in the prevailing opinion that there is no basis for considering these payments as the repayment of loans.

Though the precise legal question presented in these cases is different from that in *Southport Mill, Ltd.*, 6 B. T. A. 1073, affd., 26 Fed. (2d) 17, the facts are strikingly similar in essential respects and the principles therein discussed have direct application here. In that case, as here, the corporation needed additional working capital and had only a limited borrowing capacity at the banks. On April 12, 1916, the principal stockholders entered into a written agreement that subsequently declared dividends should be left in the treasury of the corporation, as though no dividend had been declared. Large dividends were subsequently declared and credited to the stockholders on the books. On the same day the accounts of the stockholders (members of the agreement) were debited in the exact amount of the dividend and the same sum was credited to " paid-in surplus special."

Subsequently the president of the corporation, on behalf of himself and certain other stockholders, paid to the corporation in cash the two amounts of $65,000 and $35,000. Each amount was immediately credited to " paid-in surplus special." No written agreement was entered into in relation to the repayment of these sums, but it was intended the money should be paid back to the president and that interest should be paid on it in the form of a special dividend.

On May 15, 1919, by resolution, the corporation declared the " paid-in surplus special " no longer necessary in its business and on June 1, 1919, paid $197,000 back to the stockholders, parties to the agreement, by debiting " paid-in surplus special " and crediting the accounts of the stockholders. On June 2, 1919, the corporation " refunded to the original depositors " the $100,000 cash ($65,000 plus $35,000), said sum being debited to " paid-in surplus special " and credited to the president in the same amount. No interest was paid and no extra dividend in lieu thereof declared.

The question before us in the *Southport Mill, Ltd.*, case was whether or not the account carried as " paid-in surplus special " could be included in invested capital. We decided that all of the funds involved, whether original cash or transferred credits, represented loans or borrowed capital and, therefore, could not be included in statutory invested capital.

In *Wm. H. Davidow Sons Co.*, 1 B. T. A. 1215, we hold that where a dividend has been duly declared and is permitted by the stockholders to remain in the business, the sum constitutes borrowed capital.

I believe these decisions and many others to the same effect that might be cited are controlling in the instant cases. In the cases before us the greater part of the contributed sums was merely transferred by appropriate entries from credits to the stockholders standing on the books of the corporation to the special fund denominated "contributed surplus." These credits had arisen from distributions to stockholders out of earnings and profits of previous years. Whether the stockholders had paid tax on the same does not appear, but this I deem immaterial in the present application. They were already debts of the corporation and represented, as to it, borrowed money. The transfer from one account to the other did not wipe out the debt. Whether they were later paid in cash or merely by credits to accounts does not appear. We only know that the "amount of $100,000 known and called on the books of the corporation 'contributed surplus' was in January, 1922, by special and separate resolution, returned to the contributing stockholders in the exact sums originally contributed and the account was closed on the books of the corporation." The fact that the corporation called the fund "contributed surplus" is no more conclusive of its real character than it was in *Southport Mill, Ltd.*, where they called the contributed fund "paid-in surplus special." The terminology employed by taxpayer in his books must always yield to a correct legal interpretation and definition of the entry.

The language of the stipulated facts in the cases before us, which must be presumed to have been carefully chosen, is strongly corroborative of the above conclusion. We note that the funds were contributed with an understanding among the stockholders that "the contributed sum would be returned to the contributors." This language directly suggests a loan. The further statement that the sums were "returned to the contributing stockholders in the exact sums originally contributed * * *" is even more strongly suggestive of a loan. A plain, obvious interpretation is always to be preferred to a strained, artificial one. Here the plain, obvious interpretation is as indicated above. To hold the payments to be dividends seems to us to require a disregarding of the plain language of the stipulated facts. Dividends are neither contributed to a corporation by the stockholders nor are they returned to the stockholders by the corporation.

I am of the opinion that the payments to the stockholders were not dividends under the law and gave rise to no income.

TRUSSELL agrees with this dissent.