Edward H. Rowekamp v. Commissioner. Leonard L. Rowekamp v. Commissioner. Bernard L. Rowekamp v. Commissioner.
Edward H. Rowekamp v. Commissioner
Docket Nos. 30035, 30036, 30037.
United States Tax Court
1951 Tax Ct. Memo LEXIS 114; 10 T.C.M. (CCH) 907; T.C.M. (RIA) 51267; August 31, 1951
*114 On December 21, 1936, B. J. Rowekamp Sons, Inc. was indebted to the Fifth-Third Union Trust Company of Cincinnati, in the amount of $7,000. This indebtedness was subsequently paid by petitioners from their personal funds. The amount thus paid was entered on the books of the Corporation as "Accounts Payable, Officers" and so carried during 1937 and 1938. In the latter part of 1938, upon recommendation of the Corporation's accountant, this account was closed out and $6,900 of the amount transferred to "Donated Surplus". This was done pursuant to authorization acquired at a meeting of the stockholders. The transfer was effected by the Corporation issuing checks to the petitioner in a total amount of $7,000, and the petitioners immediately placing $6,900 of the amount back to the credit of the Corporation in its bank account. Thereafter the sum of $6,900 was carried on the Corporation's books as donated surplus. On its excess profits tax returns for the taxable years 1942, 1943, and 1944 this amount was treated as equity invested capital. Such treatment was accepted by respondent. During 1944 the Corporation distributed $2,300 to each petitioner. Petitioners did not report the amount *115 in their individual income tax returns for that year. Held: The payment of $2,300 to each of the petitioners by the Corporation was from its accumulated earnings and profits and constituted a taxable dividend within the meaning of section 115, I.R.C.
George W. Byers, Esq., 404 St. Paul Bldg., Cincinnati, Ohio. Elmer E. Lyon, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion In these proceedings the petitioners seek a redetermination of deficiencies in their respective income taxes for 1944, as follows: Docket No.
30035
Edward H. Rowekamp
$1,070.24
30036
Leonard L. Rowekamp
1,106.89
30037
Bernard L. Rowekamp
1,008.03 The cases raise a single common issue, i.e., whether certain distributions constituted dividends under *116 section 115, Internal Revenue Code. Findings of Fact The facts that were stipulated are so found and made a part hereof. Other facts are adduced from the oral testimony of three witnesses. Petitioners are individuals with residences in Cincinnati, Ohio. They are brothers and are the sole stockholders and officers of B. J. Rowekamp Sons, Inc., (hereinafter referred to as the "Corporation"). They own 50 shares each of the 150 shares of stock outstanding in the Corporation. Each filed his individual Federal income tax return for the taxable year 1944 with the collector of internal revenue for the first district of Ohio. On December 21, 1936, the Corporation was indebted to the Fifth-Third Union Trust Company in the amount of $7,000. The Corporation did not pay this indebtedness to the Fifth-Third Union Trust Company and it was subsequently paid by the petitioners herein. Credit statements issued during 1937 and 1938 showed the sum of $7,000 due the petitioners as contributed capital. No promissory notes were executed by the Corporation payable to the petitioners for the amount of $7,000, and no interest was paid the petitioners by the Corporation on *117 the $7,000. One H. H. Lindsey made the monthly audits and prepared the annual income tax returns for the petitioners and the Corporation. Monthly audit statements were prepared and a letter dated April 23, 1938, which accompanied the audit statement for March of that year, contains the following statement: "Due to the payments of Officers' salaries for 1937 the ratio of current assets to current liabilities is less than 2 to 1. However, in liabilities thus shown is a $7,000.00 loan from officers. While this is still a liability, it is shown on credit reports as contributed capital. However, this should actually be donated to eliminate it from the liabilities." The audit statement for the month of August, 1938, contained a balance sheet as at August 31, which is summarized as follows: ASSETS
Cash
$ 5,833.03
Accounts Receivable
23,795.78
Accounts Receivable, Officers
4,800.00
Inventory
10,388.57
Fixed Assets (after depreciation)
2,598.66
Good Will
5.00
Deferred Charges
1,320.65
Total Assets
$48,741.69
LIABILITIES AND NET WORTH
Accounts Payable
$19,407.09
Accounts Payable, Officers
7,000.00
Accrued Wages
550.00
Accrued Taxes
247.95
Capital Stock
15,000.00
Surplus
6,536.65
Total Liabilities and
Net Worth
$48,741.69
*118 An entry on the cash receipts and disbursements journal dated October 26, 1938, showed that checks numbered 4469, 4470, and 4471, the first in the amount of $2,333.34 [1] and the latter two in the amount of $2,333.33 [1] had been issued to B. L. Rowekamp, Edward H. Rowekamp, and Leonard L. Rowekamp. A further entry on the same date showed as cash receipts "capital contribution from stockholders," in the amount of $6,900. [1]
The checks issued, as indicated above, were endorsed by the stockholders and deposited in the bank account of the Corporation. The corporate deposit book shows a deposit of $6,900 [1] made on October 26, 1938. Balance sheets of the Corporation as at December 31, 1938, and on all subsequent dates to December 31, 1944, show donated surplus in the amount of $6,900. [1] The minutes of an annual meeting of the shareholders held on January 10, 1939, at which all stockholders were present, contain the following statements with respect to this *119 transaction: "The president reported that the shareholders had individually paid notes payable of the corporation aggregating $7,000.00 [1] but that none of said shareholders desired the issue of further stock in the corporation and wished said sum of $7,000.00 to be a capital contribution to the corporation. The other shareholders agreed with the president's said statement. Thereupon the following agreement was offered to the shareholders and signed by the shareholders: "WHEREAS, during the year 1938 the undersigned paid a note or notes signed by this corporation in the sum of $7,000.00. "AND WHEREAS, none of the undersigned desire additional stock of this corporation at this time. "NOW, THEREFORE, in consideration of the waiver by each of us of his rights to additional stock in the corporation, it is agreed that each of us forever surrender all rights to any additional stock in the corporation accruing to each of us by reason of the payment by each of us of any or all portion of the sum of $7,000.00 referred to in the preamble to this agreement." *120 The agreement indicated in the foregoing portion of the corporate minutes was executed by each of the taxpayers whose returns are under consideration herein. These minutes represent what took place, what was discussed, and what was agreed upon at the stockholders' meeting on January 10, 1939. There was no other agreement between the stockholders and the Corporation with reference to the petitioners' contribution of the amount of $7,000. The Corporation, on its excess profits tax returns for the taxable years ended December 31, 1942, 1943, and 1944, treated the sum of $6,900 as equity invested capital and the Commissioner accepted the treatment of the sum as such. Balance sheets of the Corporation as of December 31, 1943, and as of December 31, 1944, are summarized as follows: Dec. 31,
Dec. 31,
Assets
1943
1944
Cash
$ 7,238.95
$21,039.20
Accounts Receivable
31,689.74
15,393.90
Investments
3,014.40
3,014.40
Inventory
4,257.20
2,489.51
Fixed Assets (after de-
preciation)
5,686.74
17,595.98
Deferred Charges
544.49
546.37
Total Assets
$52,431.52
$60,079.36
Liabilities and Net
Worth
Accounts Payable
$ 9,589.25
$17,158.34
Accrued Taxes
2,049.73
2,883.88
Net Worth
Capital Stock, common
15,000.00
15,000.00
Donated Surplus
6,900.00
Earned Surplus
18,892.54
25,037.14
Total Liabilities and
Net Worth
$52,431.52
$60,079.36
*121 During the taxable year 1944 the Corporation distributed to each petitioner the sum of $2,300, which was not reported as taxable income on the individual income tax returns for that year. The Commissionerr, in each notice of deficiency upon which the petitions herein are based, determined that the amount of $2,300 paid to each of the petitioners by the Corporation was a distribution by the Corporation from its accumulated earnings and profits and that such payments constituted a taxable dividend under section 115 of the Internal Revenue Code, resulting in the deficiencies proposed herein. We make the following additional findings: The amount of $7,000 used by the petitioners from their personal funds in order to pay off the indebtedness of B. J. Rowekamp Sons, Inc., was a contribution to the capital of the Corporation and not a loan by the petitioners to the Corporation. The payment in the amount of $2,300 made to each of the petitioners by B. J. Rowekamp Sons, Inc., during the taxable year 1944 was a distribution by that corporation from its accumulated earnings and profits made to each petitioner as a stockholder, and such payment constituted a taxable *122 dividend within the meaning of section 115 of the Internal Revenue Code. Opinion VAN FOSSAN, Judge: The sole issue presented in these consolidated cases is whether certain distributions made to petitioners herein by the Corporation, of which they were the sole stockholders, constitute dividends within the meaning of section 115, Internal Revenue Code. [2]
*123 On December 21, 1936, the Corporation was indebted to the Fifth-Third Union Trust Company of Cincinnati, in the amount of $7,000. This indebtedness was subsequently paid by the petitioners from their personal funds. The amount thus paid was entered on the books of the Corporation as "Accounts Payable, Officers" and so carried during 1937 and 1938. No promissory notes were executed in favor of petitioners and no interest was ever paid them. In the latter part of 1938, upon recommendation of the Corporation's accountant, this account was closed out and $6,900 of the amount transferred to "Donated Surplus". This was done pursuant to the authorization acquired at the stockholders' meeting, a portion of the minutes of which are set out above. The transfer was effected by the Corporation issuing checks to the petitioners in a total amount of $7,000, and the petitioners immediately placing $6,900 of the amount back to the credit of the Corporation in its bank account. Thereafter the sum of $6,900 was carried on the corporate books as donated surplus. On its excess profits tax returns for the taxable years 1942, 1943, and 1944, this amount was treated as equity invested capital. Such treatment *124 was accepted by respondent. During 1944 the Corporation distributed $2,300 to each petitioner. Petitioners did not report this amount in their individual income tax returns for that year. Petitioners argue that the distributions were made in repayment of the money previously advanced by them; that they, as stockholders, had an oral agreement that such money constituted a loan to be paid back to them; that this agreement and intent survived throughout any subsequent transaction; and that, therefore, such distribution does not constitute a taxable dividend. In support of their argument they rely solely upon Weaver v. Commissioner, 58 Fed. (2d) 755, C.A. 9 reversing 21 B.T.A. 1283; and the dissenting opinion in Chester N. Weaver, 21 B.T.A. 1283, 1288. In the Weaver case, the taxpayers were stockholders in a California corporation. In order to increase the working capital of the corporation the stockholders paid into the corporation the sum of $100,000. This amount was paid in proportion to each of their stockholdings and the capital of the corporation was increased accordingly. The stockholders received no stock certificates for the amount so *125 paid. A verbal understanding existed among them that at some future date the contributed sum would be returned to them; thereafter the amount of $100,000 was carried in a surplus account entitled "Contributed Surplus." The greater part of this amount was paid in by the stockholders from various sums credited to their individual accounts on the corporate books from former years' earnings and profits of the corporation. Subsequently the amount of $100,000 was returned to the contributing stockholders in the exact amounts originally contributed by them and the account on the books of the Corporation closed. The Board of Tax Appeals, with two Members dissenting, held that the distribution to the stockholders was a distribution of capital earnings, taxable as a dividend; and that the agreement between the stockholders that the amount contributed by them would be returned when no longer needed did not create a creditor-debtor relationship between them and the Corporation. In reversing the Board, the Court of Appeals for the Ninth Circuit said, inter alia: "The agreement of the stockholders with one another was in legal effect an agreement to loan $100,000 to the corporation for working *126 capital, each stockholder contributing his pro rata share. By accepting the benefit of this agreement the corporation was bound by the corresponding burden to return the money to the contributors. When it did so it repaid the loan in accordance with that agreement. We see no basis here for taxation of this money on the theory that it is income. * * *" Respondent denies the existence of such an understanding among the stockholders here. He argues that this fact distinguishes the instant case from the Weaver case, and he contends that the distribution to each of the petitioners constitutes a taxable dividend within the meaning of section 115, supra. This brings us to the precise question of whether there actually was an oral understanding among the petitioner-stockholders that the amount so advanced was a loan repayable to them and that such an understanding continued despite the subsequent transaction referred to above. The answer involves a determination of fact and is dispositive of the issue herein. The actual existence of the oral understanding must emerge from an examination of all pertinent facts found. We are of the opinion that the facts and the evidence fall far short *127 of indicating that such existed here. The most that can be said is that there may have been arrangement of this sort at the time the corporate indebtedness was paid, but most certainly it was abandoned by the subsequent action of the petitioner-stockholders. Petitioners seek to explain this later action as mere form to make the corporate books consistent with the corporate credit statement. True, book entries, the absence of notes, the failure to pay interest, the absence of a written agreement, and formal corporate minutes are not conclusive. But it is also true that the original entry as an account payable and the vague self-serving testimony of petitioners are inadequate to establish a loan. It is from the actions of parties concerned that their real intentions must be derived. And since petitioners were the sole stockholders of the Corporation, their transactions with it invite special scrutiny. W. T. Wilson, 10 T.C. 251. Each petitioner-stockholder was present and took part in the proceedings which authorized and effected the capital contribution of the amount originally carried as a liability. Each received a check for the amount he had paid out and each in turn *128 immediately put $2,300 of the amount so received back into the Corporation to be treated as donated surplus. Further, each signed the corporate minutes of the proceedings referred to above. And it is to be presumed that one or more of them signed and executed the corporate excess profits tax returns in which the amount in question was treated and allowed as equity invested capital. Now that the "book transaction" has served its purpose, petitioners would have us believe that they signed these corporate minutes and tax returns with certain mental reservations that the amount was to be repaid tax free as an outstanding obligation of the Corporation. Such an interpretation of these actions is implausible and incredible. We think that the payment of $2,300 to each petitioner was a distribution of corporate earnings and profits, constituting a taxable dividend within the meaning of section 115, supra, and we so hold. Accordingly, the determination of the respondent will not be disturbed. Decisions will be entered for the respondent. Footnotes
1. The obvious discrepancy between the figures $6,900 and $7,000 appearing several times in this and subsequent paragraphs is as it is stated in the stipulation. It is not explained or cleared up by the testimony in the record.↩
1. The obvious discrepancy between the figures $6,900 and $7,000 appearing several times in this and subsequent paragraphs is as it is stated in the stipulation. It is not explained or cleared up by the testimony in the record.↩
2. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. (a) Definition of Dividend. - The term "dividend" when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * * (b) Source of Distributions. - For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *↩